## Commonwealth vs. Angel Aviles.

Hampden. September 7, 2011. - December 6, 2011.

Present: Ireland, C.J., Spina, Cordy, Botsford, & Gants, JJ.

*Rape. Indecent Assault and Battery. Practice, Criminal,* Motion in limine, Objection. *Evidence,* First complaint, State of mind, Verbal completeness.

In the circumstances of a criminal proceeding, the defendant fully preserved an evidentiary issue for appellate review by making numerous objections during the pretrial colloquies on his motion in limine to prevent the introduction of the evidence. [66-67]

At the trial of indictments charging rape of a child and indecent assault and battery on a child, the victim's testimony that, three years after she made a first complaint to her mother regarding indecent touching by the defendant, she made a second complaint to her grandmother that the defendant had raped her, although not admissible under the first complaint doctrine, was nevertheless relevant and independently admissible evidence to rebut the defendant's suggestion during cross-examination that the victim had fabricated her accusations against him [67-70]; similarly, the testimony of the victim's mother that she had learned "additional information" (i.e., as a result of the complaint to the grandmother) was properly admitted for the independent purpose of rebutting the inferences raised by defense counsel's inquiries [70-71].

Statement regarding the continuing vitality of the first complaint doctrine, and statement that an appellate court shall review a trial court judge's determination regarding the admissibility of evidence pursuant to that doctrine under an abuse of discretion standard. [71-73]

At a criminal trial, the judge properly admitted in evidence, under the doctrine of verbal completeness, a very limited portion of a prior consistent statement made by the victim during her grand jury testimony. [73-76]

Indictments found and returned in the Superior Court Department on December 28, 2005.

The cases were tried before *Tina S. Page,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Eric S. Brandt,* Committee for Public Counsel Services, for the defendant.

*Bethany C. Lynch,* Assistant District Attorney, for the Commonwealth.

*William F. Sheehan*, of the District of Columbia, & *Colby Bruno, Brenda R. Sharton*, & *Katherine A. Borden*, for Victim Rights Law Center & others, amici curiae, submitted a brief.

SPINA, J. A jury in the Superior Court found the defendant, Angel Aviles, guilty of rape of a child, pursuant to G. L. c. 265, § 23, and indecent assault and battery on a child under the age of fourteen, pursuant to G. L. c. 265, § 13B. The defendant appealed. A divided panel of the Appeals Court affirmed the convictions, see *Commonwealth* v. *Aviles*, 77 Mass. App. Ct. 389 (2010), and we granted the defendant's application for further appellate review. The defendant challenges the admission of testimony concerning a "second complaint" made by the victim, whom we shall call Marie,[1] and the admission, under the doctrine of verbal completeness, of a prior consistent statement made by Marie during her grand jury testimony. For the reasons that follow, we affirm the convictions. We also take this opportunity to modify the scope of judicial review of decisions on the admissibility of testimony pursuant to the "first complaint" doctrine as set forth in *Commonwealth* v. *King*, 445 Mass. 217 (2005), cert. denied, 546 U.S. 1216 (2006) (*King*), and its progeny.[2]

1. *Factual background.* We summarize the facts as the jury could have found them, reserving certain details for later discussion.

Sometime during 2002, Marie, her mother, and her younger sister moved into an apartment shared by the defendant and his mother. The defendant had offered them a place to stay in exchange for assistance with his mother, who had health problems. Marie was eight years old at this time. The apartment consisted of a living room, a kitchen, two bedrooms, and a bathroom. The defendant slept in one bedroom, and his mother slept in the other bedroom. When Marie and her family moved into the apartment, the girls slept on an air mattress on the floor

[1]In the interest of privacy, we use the same pseudonym adopted by the Appeals Court. See *Commonwealth* v. *Aviles*, 77 Mass. App. Ct. 389, 390 & n.1 (2010).

[2]We acknowledge the amicus brief filed by the Victim Rights Law Center, Boston Area Rape Crisis Center, and Jane Doe, Inc., in support of the Commonwealth. The Women's Bar Association has joined section II of this brief (pertaining to the retention of the "first complaint" doctrine).

of the defendant's bedroom, and their mother slept either on the air mattress or in the defendant's bed. Due to the defendant's work schedule, he generally went to bed before Marie.

On four or five occasions over the course of several months, when Marie and the defendant were alone in his bedroom at night, the defendant got onto the air mattress with Marie, used his legs to pin her down, and touched her buttocks over her clothes. On one occasion, he rubbed Marie's "vagina area" over her clothes. When Marie told the defendant to leave her alone, he returned to his bed. She did not mention these incidents to her mother.

One night, Marie, her mother, and her sister were sleeping on the air mattress when Marie awoke to find the defendant kneeling next to her, attempting to remove her jeans. She got up, walked to the bathroom, which was across the hall, and locked herself inside. The defendant managed to unlock the door, and he entered the bathroom. Once inside, he pulled down Marie's jeans and underpants, put his hands on her waist, pulled her close to him, and turned her around so that her back was to him. As Marie was crying, she heard the defendant pull down his own jeans. Then, as Marie testified, the defendant "put his penis into [her] butt," which hurt. When the defendant finished, he told Marie not to tell her mother, or he "would do something to her [mother]." Marie returned to the bedroom, whereupon her mother woke up and asked what was wrong, to which Marie replied, "[N]othing." Marie did not mention the incident in the bathroom to her mother because of the defendant's warning.

Several nights later, Marie became upset when her mother told her that it was time to go to bed. Marie began to cry and resisted going into the bedroom. She then revealed to her mother for the first time that the defendant had "touched" her, although Marie did not provide any details. Marie's mother and the defendant's mother, who had overheard the conversation, immediately confronted the defendant, who denied touching Marie. A few days later, Marie and her family moved out of the apartment and returned to Marie's maternal grandmother's home, where the family had lived before moving in with the defendant. None of the sexual abuse was reported to the police until 2005 when, after seeing the defendant's photograph on television, Marie told her grandmother about the incident in the bathroom. The grandmother informed

Marie's mother, who then contacted the police. The defendant was arrested and indicted on charges of rape of a child, and indecent assault and battery on a child under the age of fourteen.

2. *Motion in limine concerning proposed first complaint testimony.* Marie's mother was designated as the first complaint witness. Before the start of trial in May, 2007, the defendant filed a motion in limine, seeking to limit the scope of admissible evidence to that disclosed in Marie's first complaint to her mother, namely such evidence as pertained to the indecent "touchings," thereby excluding any evidence relating to Marie's disclosure to her grandmother about the alleged rape. The defendant also sought to exclude any evidence that went beyond the scope of Marie's testimony at trial, such as reports to the police. The defendant's motion in limine was the subject of three colloquies before the judge.

During the first colloquy, the prosecutor acknowledged that Marie's disclosure to her grandmother about the rape, which had been precipitated by Marie's observation of the defendant's photograph on television, went beyond the scope of the first complaint doctrine. As such, the Commonwealth would not "get into details" about the issue, but the prosecutor stated that Marie properly could testify to the fact that she had made a complaint to her grandmother. Defense counsel objected to any testimony concerning a conversation between Marie and her grandmother, as well as an "ensuing police report," because it was not first complaint evidence. The judge reserved decision on the matter pending review of *Commonwealth* v. *Buelterman,* 68 Mass. App. Ct. 829 (2007).[3]

During the second colloquy, which occurred the following morning, the prosecutor revisited the defendant's motion in

[3]In *Commonwealth* v. *Buelterman,* 68 Mass. App. Ct. 829, 830-831 (2007), the court stated that because a complainant was the sole witness for the Commonwealth, her challenged testimony that she had "confided in a friend about what had happened," *id.* at 830, did not fall within the scope of the "fresh complaint" doctrine. The court then considered whether other similar testimony by the victim constituted inadmissible hearsay. See *id.* at 831-833. The court upheld the admissibility of the complainant's testimony regarding the fact that she had told other people about a sexual assault, and pointed out that the complainant properly had not testified about the details of those conversations. See *id.* at 832-833.

limine and clarified that she intended to elicit from Marie testimony that she had seen the defendant on television, but not why he was there. Defense counsel objected on the grounds that testimony regarding the defendant's appearance on television was neither part of Marie's first complaint to her mother nor relevant evidence. The judge pointed out that the first complaint testimony was limited to the indecent assault and battery charge. Defense counsel again asserted that testimony elicited from Marie that she had a conversation with her grandmother after seeing the defendant on television, and that her mother then brought her to the police station, was irrelevant and prejudicial. The judge ruled that although Marie could not disclose the substance of what she had said to her mother or grandmother about the alleged rape, Marie could testify that "as a result of seeing the [d]efendant on television, she made a disclosure to her mother or grandmother." In the judge's view, the Commonwealth was entitled to explain Marie's three-year delay in reporting the alleged rape. Defense counsel objected to this ruling and asked the judge to preserve his objection. The judge did not respond.

During the third colloquy, which occurred very soon after the second, defense counsel sought to revisit the issue of Marie's observation of the defendant's photograph on television. In response to the judge's earlier ruling on the scope of Marie's testimony, defense counsel argued that cross-examination would be "almost impossible" given the circumstances surrounding the defendant's appearance on television (namely, that he was a registered sex offender). After indicating that she would not change her ruling, the judge stated that defense counsel's "objection [was] noted." When defense counsel then asked whether his rights were preserved, the judge responded, "Very much so."

3. *Trial testimony.* The Commonwealth's only witnesses were Marie and her mother. Marie described the manner in which the defendant had touched her on the air mattress, recounted the details of the incident in the bathroom, and testified that she had disclosed the alleged rape to her grandmother in 2005. Marie gave no details about her conversation with her grandmother, limiting her testimony to the fact that such a conversation had occurred after she saw the defendant's picture on

television. Marie also testified that after her grandmother told her mother about the rape, Marie and her mother went to the police. On cross-examination, defense counsel led Marie through a time line of her disclosures to her mother, her grandmother, and the police. He questioned her extensively about her statement to the police, pointing out discrepancies between the statement and her trial testimony, most notably the fact that Marie did not mention in her statement that the defendant had threatened to hurt her mother if Marie told her about the alleged rape. Defense counsel also elicited testimony from Marie that she wanted to live with her grandmother.

Prior to the first complaint testimony from Marie's mother, the judge instructed the jury on the purpose and limitations of such testimony in accordance with *King*, 445 Mass. at 219, 247-248. Marie's mother then recounted that Marie had told her that the defendant had "touched" her, but that Marie had provided no further details. Marie's mother also testified that she did not notify the police in 2002 because she thought that her children would be safe when they moved out of the apartment. As to the alleged rape, Marie's mother only testified that she had a conversation with Marie in 2005 in which she learned "additional information" about Marie and the defendant, and that, "as a result" of this conversation, she and Marie went to the police and gave statements.[4]

The defendant did not testify at trial. Instead, his strategy was to undermine Marie's testimony through cross-examination. In particular, defense counsel elicited testimony from Marie that she would have preferred to live at her grandmother's house, rather than moving in with the defendant and his mother, thereby suggesting that Marie had fabricated the allegations against the defendant in order to change her living arrangements. The defendant presented testimony from one witness, Lori Peberis, a court reporter who had recorded and transcribed Marie's testimony before the grand jury in November, 2005. Peberis testified that during questioning by the Commonwealth in the grand jury proceeding, when Marie was asked whether the defendant had

---

[4]Defense counsel objected to the prosecutor's efforts to have Marie's mother expand on her testimony as to why she went to the police in 2005. The judge sustained the objection.

"touch[ed] [her] buttocks area with his hands," Marie responded, "No." On cross-examination, Peberis further testified that in subsequent questioning by the Commonwealth before the grand jury, when Marie was asked if the defendant "had touched her vaginal area with her pants on," Marie responded, "Yes."

4. *Preservation of issue for review.* The primary thrust of the defendant's appeal is that the judge erred by allowing testimony that two years after Marie's first complaint to her mother, which disclosed only that the defendant had indecently "touched" her, Marie told her grandmother about the alleged rape. As a preliminary matter, the defendant asserts that he fully preserved this issue for appellate review by making numerous objections during the pretrial colloquies on his motion in limine. We agree.

Ordinarily, the mere filing of a motion in limine to prevent the introduction of evidence is insufficient to preserve appellate rights. See *Commonwealth* v. *Whelton*, 428 Mass. 24, 25-26 (1998) (trial objection necessary to preserve appellate rights notwithstanding motion in limine); *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 7 (1986). See also Mass. G. Evid. § 103(a)(3) (2011). However, the adequacy of an objection to the admissibility of the evidence at issue must be assessed in the context of the proceeding as a whole. See *Commonwealth* v. *Galicia*, 447 Mass. 737, 746-747 (2006). We have stated that where a defendant has objected to the denial of his motion in limine, and the judge has said words to the effect, "Your objection's noted, and your rights are saved," the defendant is relieved of the necessity to object to the evidence at trial. *Commonwealth* v. *Kee*, 449 Mass. 550, 553 n.5 (2007). See *Commonwealth* v. *Dunton*, 397 Mass. 101, 102 n.2 (1986) (where defendant requested particular instruction before charge but did not object to judge's refusal to give instruction after charge, issue nonetheless preserved for appellate review because judge told defense counsel that defendant's rights "were fully protected"); *Commonwealth* v. *LaSota*, 29 Mass. App. Ct. 15, 24 n.12 (1990) (issue preserved where judge twice noted defense counsel's objection and said that "his rights were preserved"). See also *Rotkiewicz* v. *Sadowsky*, 431 Mass. 748, 751-752 (2000).

Here, although the focus of the third colloquy primarily was on the admission of testimony pertaining to Marie's observation

of the defendant's photograph on television, the larger context for defense counsel's objection was his challenge to the judge's ruling during the second colloquy on the scope of Marie's testimony about the disclosure to her grandmother. The judge's preservation of the defendant's rights at the end of the third colloquy necessarily encompassed this broader challenge. The defendant was not required to object again at trial to the admissibility of testimony pertaining to Marie's disclosure to her grandmother because he adequately preserved this issue during the pretrial colloquies, as plainly acknowledged by the judge. Accordingly, we review the challenged testimony under the prejudicial error standard. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).

5. *First complaint testimony.* The defendant contends that the judge committed reversible error by allowing evidence that, three years after Marie made a first complaint to her mother regarding indecent touching by the defendant, she made a "second complaint" to her grandmother that the defendant had raped her. In the defendant's view, the Commonwealth only was entitled to present evidence regarding Marie's first complaint to her mother in 2002. We conclude that, under the first complaint doctrine, the Commonwealth was not entitled to present evidence, either from Marie or her mother, pertaining to Marie's disclosure to her grandmother. However, we further conclude that, in the circumstances of this case, the admission of such evidence did not constitute prejudicial error because it was properly admitted to rebut the defendant's suggestion that Marie had fabricated her accusations against him.

We begin with a brief overview of the first complaint doctrine, both to resolve the issue immediately before us and, as will be discussed in greater detail later in this opinion, to put in context our reasons for modifying the scope of judicial review of decisions on the admissibility of first complaint testimony. In *King*, we replaced the doctrine of "fresh complaint" with the doctrine of "first complaint" to reflect "a contemporary understanding of information that will permit jurors to make a fair assessment of a sexual assault complainant's credibility." *King*, 445 Mass. at 237. See generally Mass. G. Evid. § 413 (2011). Pursuant to the first complaint doctrine, we "no longer permit in evidence testimony from multiple complaint witnesses, limiting the

testimony to that of one witness" who, where feasible, will be the first person told of the sexual assault.[5] *King, supra* at 242-243. Such witness "may testify to the details of the alleged victim's first complaint of sexual assault and the circumstances surrounding that first complaint as part of the prosecution's case-in-chief." *Id.* at 243. Where a first complaint witness testifies at trial regarding the complaint, the complainant also may testify about the details of the first complaint and the reasons why it was made at that particular time.[6] See *id.* at 245. What the complainant may not do, however, is testify to the fact that she "told" others, apart from the first complaint witness, about the sexual assault, even where the details of the conversation have been omitted. See *Commonwealth* v. *Arana*, 453 Mass. 214, 223 (2009) (*Arana*); *Commonwealth* v. *Monteiro*, 75 Mass. App. Ct. 489, 493 (2009). See also *Commonwealth* v. *Stuckich*, 450 Mass. 449, 456-457 (2008) (*Stuckich*).[7] Such testimony "is the equivalent of saying that [the complainant] repeated her account of the incident, i.e., it allows fresh complaint testimony through the back door. Repetition of the narrative tends to enhance the credibility of the complainant to the prejudice of the defendant." *Id.* at 457.

We agree with the defendant that Marie's testimony that she told her grandmother sometime in 2005 that the defendant had raped her was not admissible under the first complaint doctrine.

---

[5] In limited circumstances, we have permitted someone other than, and in lieu of, the first complaint witness to testify about an alleged victim's complaint of sexual assault. See *Commonwealth* v. *Murungu*, 450 Mass. 441, 445-446 (2008); *Commonwealth* v. *King*, 445 Mass. 217, 243-244 (2005), cert. denied, 546 U.S. 1216 (2006) (*King*). Cf. *Commonwealth* v. *Lyons*, 71 Mass. App. Ct. 671, 672-673 (2008) (recording of 911 telephone call properly admitted as complainant's first complaint evidence; admission of police officer's "live" testimony in addition to 911 tape recording constituted error).

[6] If a first complaint witness is not produced at trial, "the complainant may not testify to the fact of the complaint or its details unless the witness to the complaint is deceased or the judge determines that there is some other compelling reason for the witness's absence that is not the fault of the Commonwealth." *King, supra* at 245 n.24.

[7] Our decision in *Commonwealth* v. *Stuckich*, 450 Mass. 449 (2008) (*Stuckich*), was issued while the present case was pending on appeal. Because *Stuckich* involved an application of the principles announced in *King*, and did not create a new rule of law, it is retroactively applicable to the facts herein. See *Commonwealth* v. *Adams*, 421 Mass. 289, 293 (1995); *Commonwealth* v. *Breese*, 389 Mass. 540, 543 (1983).

Although the details of this conversation were omitted, Marie's testimony regarding the fact of her disclosure was essentially the same as permitting her grandmother to testify, thereby lending improper credence to Marie's account. See *id.* Such testimony undermines the purpose and limitations of the first complaint doctrine. See *id.* at 456-457.

The first complaint doctrine does not, however, "prohibit the admissibility of evidence that, while barred by that doctrine, is otherwise independently admissible." *Arana, supra* at 220-221. See *Commonwealth* v. *Dargon,* 457 Mass. 387, 399 (2010) (*Dargon*); *Commonwealth* v. *McCoy,* 456 Mass. 838, 845 (2010). See also Mass. G. Evid. § 413(b) (2011). For example, "[e]vidence of a victim's state of mind or behavior following a crime has long been admissible if relevant to a contested issue in a case." *Arana, supra* at 225. We have cautioned that "[i]f testimony, other than that specifically and properly designated as first complaint testimony, serves no purpose other than to repeat the fact of a complaint and thereby corroborate the complainant's accusations, it is inadmissible." *Id.* at 229. However, if the testimony is relevant and admissible for reasons that are independent of the first complaint doctrine, the judge may admit it "after careful balancing of the testimony's probative and prejudicial value." *Id.* See *Dargon, supra* at 400. "In this way, the jury will be able to make a fairer and more accurate assessment of the Commonwealth's case." *Arana, supra.* See *Commonwealth* v. *Monteiro, supra* at 495. See also *Commonwealth* v. *Montanez,* 439 Mass. 441, 456 (2003) (Sosman, J., concurring) ("Obsession with the strictures imposed on [first] complaint testimony should not blind us to the fact that [first] complaint is not the only basis for admitting such evidence").

Here, although the challenged testimony about Marie's disclosure to her grandmother was not admissible as first complaint evidence, it became relevant and independently admissible evidence during her cross-examination. Defense counsel's questions suggested that her accusations were fabricated to provide a basis for moving out of the defendant's apartment and back to her grandmother's home. See *Arana, supra* at 226-227. On cross-examination, defense counsel probed Marie's feelings about her living arrangements through a series of inquiries

about whether she preferred to stay with her grandmother. Marie's testimony that she told her grandmother about the rape in 2005 — three years subsequent to the alleged incident and *after* she had already returned to her grandmother's house — served to rebut a defense theory of fabrication. Thus, Marie's testimony became relevant[8] to a contested issue at trial and was not merely repetition of the fact of her complaint and corroboration of her own accusations. It was a significant part of the Commonwealth's response to the defendant's theory of fabrication. We conclude that there was no prejudice to the defendant because the evidence would have been admissible on redirect examination of Marie.

As to the evidence from Marie's mother, after she testified about her daughter's first complaint, which pertained only to Marie's allegation that the defendant had "touched" her, Marie's mother testified that she had another conversation with Marie in 2005 during which she learned some "additional information" about Marie and the defendant, and that, as a result of this conversation, she and Marie went to the police and gave statements. Marie's mother was not asked about, and did not provide, any details of this second conversation. We have stated that where a complainant makes successive complaints to the first complaint witness, only the initial complaint, here, Marie's disclosure about the indecent touchings, is admissible as first complaint evidence. See *Arana, supra* at 222-223, and cases cited. Moreover, as to Marie's subsequent complaint, one that pertained to a different alleged crime, the first person to whom the complaint was made was Marie's grandmother, not her mother. Accordingly, the challenged testimony from Marie's mother about learning "additional information" in 2005 was not admissible as first complaint evidence. Nonetheless, we conclude that this evidence, like Marie's own testimony, was properly admitted for the independent purpose of rebutting the inferences raised by

---

[8] " 'Relevant evidence' is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Mass. G. Evid. § 401 (2011). See *Commonwealth* v. *Schuchardt*, 408 Mass. 347, 350 (1990). "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, being unnecessarily time consuming, or needless presentation of cumulative evidence." Mass. G. Evid. § 403 (2011). See *Ruszcyk* v. *Secretary of Pub. Safety*, 401 Mass. 418, 422-423 (1988).

defense counsel's inquiries — inquiries designed to suggest that Marie fabricated her allegations against the defendant in order to return to her grandmother's home — and was necessary for a fair and accurate understanding of the Commonwealth's case.[9]

6. *Reexamination of first complaint doctrine.* Six years after the adoption of the first complaint doctrine, this case presents us with the opportunity to assess its continued vitality. We have considered the history of the doctrine, its development in the years since it first was enunciated in *King*, and the variety of factual scenarios that have involved first complaint evidence. We now conclude that the doctrine should be retained, but that the scope of appellate review of decisions on the admissibility of first complaint evidence should be modified.

We remain concerned with the fact that sexual assault victims, particularly children, often do not promptly report or disclose such crimes for a variety of reasons, including fear, shame, psycho-

[9]The present case is not controlled by our decision in *Commonwealth* v. *Kebreau*, 454 Mass. 287 (2009) (*Kebreau*). In that case, the defendant began sexually abusing the complainant, his daughter, when she was in sixth grade and continued to assault her throughout her high school years. See *id.* at 289. The complainant's mother was allowed to testify regarding a disclosure made by the complainant, when she was in seventh or eighth grade, that the defendant had been touching her inappropriately. See *id.* at 290, 294-295. The complainant's academic advisor also was allowed to testify, as an additional first complaint witness, regarding a disclosure made by the complainant, when she was in college, that the defendant had raped her. See *id.* We concluded that the first complaint doctrine "permits testimony from *two* first complaint witnesses . . . where each witness testifies to disclosures made years apart concerning different periods of time and escalating levels of abuse, which constitute different and more serious criminal acts committed over a lengthy period" (emphasis added). *Id.* at 288-289.

Here, the Commonwealth did not seek to introduce evidence from two designated first complaint witnesses testifying about a victim's disclosures made years apart about different and escalating acts of abuse occurring over a lengthy period of time. Instead, the Commonwealth presented evidence from only one first complaint witness, Marie's mother, and sought to have her testify about disclosures made by Marie in 2002 and 2005 concerning criminal acts perpetrated by the defendant over the course of several months. As previously mentioned, with respect to Marie's 2005 disclosure, Marie's mother was not the first person Marie told about the rape. Moreover, unlike the circumstances in *Kebreau*, the rape alleged here occurred *before* Marie made a first complaint to her mother, not after. As such, Marie could have disclosed it as part of her first complaint, and her mother properly could have testified about it. We conclude that the particular facts of *Kebreau* distinguish that case from the present one.

logical trauma, or concern that they will not be believed. See
*King,* 445 Mass. at 237-238, 240. See also *Commonwealth* v.
*Licata,* 412 Mass. 654, 657 (1992) ("It is not difficult to understand
a rape victim's reluctance to discuss with others, particularly
strangers, the uncomfortably specific details of a sexual attack").
The primary goals of the first complaint doctrine were, and still
are, to "refute any false inference that silence is evidence of a
lack of credibility on the part of [sexual assault] complainants,"
*King, supra* at 243, and "to give the jury as complete a picture as
possible of how the accusation of sexual assault first arose." *Id.*
at 247. We continue to believe that by allowing in evidence all
the details of the first complaint, the doctrine gives the fact finder
"the maximum amount of information with which to assess the
credibility of the . . . complaint evidence as well as the over-all
credibility of the victim." *Commonwealth* v. *Licata, supra* at 659,
quoting Graham, The Cry of Rape: The Prompt Complaint Doc-
trine and the Federal Rules of Evidence, 19 Willamette L. Rev.
489, 511 (1983). The fact finder should not be left to speculate
on the evidence or to draw erroneous inferences due to incomplete
information. See *King, supra* at 244-245.

Until now, we have considered the first complaint doctrine to
be an "evidentiary *rule*" that is designed "to give support to a
complainant's testimony of a sexual assault in cases where the
credibility of the accusation is a contested issue at trial" (empha-
sis added). *Arana,* 453 Mass. at 228. The admission of evidence
in violation of such evidentiary rule, that is, in violation of the
established parameters of the first complaint doctrine, will always
be deemed error. See, e.g., *id.* at 222-223; *Commonwealth* v.
*Lyons,* 71 Mass. App. Ct. 671, 673-674 (2008). Where a defend-
ant has objected to the admission of the evidence, an appellate
court then will determine whether the error was prejudicial, see
*Arana, supra* at 228, and where a defendant has not raised an
objection, an appellate court will determine whether the error cre-
ated a substantial risk of a miscarriage of justice. See *Com-
monwealth* v. *McCoy,* 456 Mass. 838, 850-852 (2010).

As our post-*King* jurisprudence has developed, it has become
apparent that trial judges need greater flexibility to deal with the
myriad factual scenarios that arise in the context of purported
first complaint evidence. Rules, because of their inherent inflex-

ibility, tend to break down when it becomes necessary to address factual circumstances not yet contemplated by the established rubric. Rather than considering the first complaint doctrine as an evidentiary "rule," it makes greater sense to view the doctrine as a body of governing principles to guide a trial judge on the admissibility of first complaint evidence. See *supra* at 67-69 (discussing first complaint principles as set forth in *King* and its progeny). The judge who is evaluating the facts of a particular case is in the best position to determine the scope of admissible evidence, keeping in mind the underlying goals of the first complaint doctrine, our established first complaint jurisprudence, and our guidelines for admitting or excluding relevant evidence. See Mass. G. Evid. §§ 401-403 (2011). See also *Commonwealth* v. *Kebreau*, 454 Mass. 287, 296 (2009) ("Any determination concerning first complaint testimony is fact-specific and requires, in the first analysis, a careful evaluation of the circumstances by the trial judge"); *Commonwealth* v. *Murungu*, 450 Mass. 441, 445-447 (2008) (judge warranted in determining whether witness other than very first person to whom victim spoke about sexual assault should be permitted to testify as substituted first complaint witness). Once a judge has carefully and thoroughly analyzed these considerations, and has decided that proposed first complaint evidence is admissible, an appellate court shall review that determination under an abuse of discretion standard.

The modification we announce today in no way should be construed as a relaxation or erosion of our first complaint jurisprudence. Our observation in *King*, *supra* at 243, that "[t]he testimony of multiple complaint witnesses likely serves no additional corroborative purpose, and may unfairly enhance a complainant's credibility as well as prejudice the defendant by repeating for the jury the often horrific details of an alleged crime," remains relevant and significant. The importance of maintaining a balance between the interests of a complainant (who still may be a child) "in having her credibility fairly judged on the specific facts of the case" and the interests of a defendant "in receiving a trial free from irrelevant and potentially prejudicial testimony" cannot be overstated.[10] *Arana, supra.*

7. *Admissibility of statement under doctrine of verbal com-*

---

[10]While the first complaint doctrine prohibits the "piling on" of multiple

*pleteness.* Last, the defendant contends that the judge committed reversible error by admitting, under the doctrine of verbal completeness, a prior consistent statement made by Marie during her grand jury testimony. With respect to the charge of indecent assault and battery, Marie testified at trial that the defendant had "touched [her] butt" four or five times, and that he had rubbed her "vagina area" once, on each occasion over her clothes. During cross-examination, defense counsel did not attempt to impeach Marie's trial testimony by showing that she had given inconsistent testimony before the grand jury. Instead, he called as a witness Lori Peberis, the court reporter who had recorded and transcribed Marie's grand jury testimony. Peberis testified that during questioning by the Commonwealth in the grand jury proceeding, when Marie was asked whether the defendant had "touch[ed] [her] buttocks area with his hands," Marie responded, "No." The Commonwealth sought to introduce a further portion of Marie's grand jury testimony pertaining to where the defendant had touched her. Over objection, the judge allowed the introduction of such additional testimony, limited to what Marie had told the grand jury about the indecent assault and battery. Peberis then testified that when Marie was asked if the defendant "had touched her vaginal area with her pants on," Marie responded, "Yes."

The defendant claims that this additional testimony introduced by the Commonwealth, relating to whether the defendant touched Marie's "vaginal area," pertained to a different subject matter than the testimony introduced by defense counsel, relating to whether the defendant touched Marie's "buttocks." In fact, the defendant continues, the subsequent testimony from Peberis concerned a separate, and additional, touching. Further, in the defendant's view, the testimony introduced by the Commonwealth was not necessary in order to prevent Marie's grand

complaint witnesses, *Commonwealth* v. *Murungu,* 450 Mass. 441, 442-443 (2008), it does not exclude testimony that is "otherwise independently admissible" and serves a purpose "other than to repeat the fact of a complaint and thereby corroborate the complainant's accusations." *Commonwealth* v. *Arana,* 453 Mass. 214, 220-221, 229 (2009). The modification that we announce today does not affect the admissibility of such evidence because it is outside the scope of the first complaint doctrine. See *id.* at 220. See also *Commonwealth* v. *Dargon,* 457 Mass. 387, 399 (2010) (certain evidence may be admissible "under an evidentiary rubric other than first complaint").

jury testimony from being misleading. Accordingly, the defendant argues that the judge erred in admitting the challenged testimony under the doctrine of verbal completeness. We disagree.

Ordinarily, the prior statement of a witness that is consistent with that witness's trial testimony is inadmissible because the statement "is not made more trustworthy by repeating it." *Commonwealth v. Tennison*, 440 Mass. 553, 563 (2003). See Mass. G. Evid. § 613(b)(1) (2011). However, a prior consistent statement may be admissible on other grounds. See *Commonwealth v. Tennison, supra.* Under the doctrine of verbal completeness, "[w]hen a party introduces a portion of a statement or writing in evidence," a judge has the discretion to "allow[] admission of other relevant portions of the same statement or writing which serve to 'clarify the context' of the admitted portion." *Commonwealth v. Carmona*, 428 Mass. 268, 272 (1998), quoting *Commonwealth v. Robles*, 423 Mass. 62, 69 (1996). See *McAllister v. Boston Hous. Auth.*, 429 Mass. 300, 303 (1999). See also Mass. G. Evid. § 106(a) (2011). Such an evidentiary mechanism helps to ensure that a party does not present "a fragmented and misleading version of events" to the fact finder. *Commonwealth v. Carmona, supra.* The doctrine of verbal completeness does not open the door for everything in a statement or document. See *Kobayashi v. Orion Ventures, Inc.*, 42 Mass. App. Ct. 492, 498 (1997). To be admitted, "the additional portions of the statement must be (1) on the same subject as the admitted statement; (2) part of the same conversation as the admitted statement; and (3) necessary to the understanding of the admitted statement." *Commonwealth v. Eugene*, 438 Mass. 343, 350-351 (2003). See *Commonwealth v. Clark*, 432 Mass. 1, 14-15 & n.8 (2000) (portions of statement sought to be introduced must qualify, explain, contradict, or put into context segments previously introduced); *Commonwealth v. Leftwich*, 430 Mass. 865, 871-872 (2000) (same); *Commonwealth v. Watson*, 377 Mass. 814, 825-831 (1979) (discussing scope and limitations of verbal completeness doctrine). Mere relevance to a case is an insufficient basis for admissibility. See *Commonwealth v. Eugene, supra* at 351.

Here, defense counsel introduced only the portion of Marie's grand jury testimony that helped the defendant's case. In doing

so, he "opened the door for the admission of the remainder of [Marie's] statement." *Commonwealth* v. *Tennison, supra* at 564. The Commonwealth sought to introduce under the doctrine of verbal completeness a very limited portion of Marie's grand jury testimony — the portion that further explained where the defendant had touched her. Contrary to the defendant's assertion, this additional testimony pertained to the same subject matter as the statements presented by defense counsel. That the part of Marie's grand jury testimony introduced by defense counsel concerned the touching of her buttocks, whereas the part of her grand jury testimony introduced by the Commonwealth concerned the touching of her vaginal area, does not render these two facets of Marie's testimony unrelated or about different subjects. Both pertained to the issue whether the defendant had committed indecent assault and battery by touching Marie inappropriately. Further, both portions of Marie's grand jury testimony were made during the same line of questioning, and they appeared on the same page of the transcript.

The obvious purpose for the Commonwealth's introduction of this evidence was to ensure that the jury were not left with the misimpression that Marie did not testify to a sexual assault before the grand jury. We conclude that all the components of the verbal completeness doctrine were met. The defendant has not demonstrated that the judge abused her discretion when she admitted the additional portion of Marie's grand jury testimony. There was no error.

*Judgments affirmed.*