## COMMONWEALTH *vs.* FRANK PLACE.

No. 10-P-1038.

Plymouth. December 6, 2011. - February 1, 2012.

Present: KATZMANN, SMITH, & GRAINGER, JJ.

*Rape. Indecent Assault and Battery. Evidence,* First complaint, Photograph. *Error, Harmless. Jury and Jurors. Practice, Criminal,* Harmless error, Jury and jurors, Challenge to jurors, Argument by prosecutor.

At the trial of indictments charging the defendant with various sexual offenses, the admission of certain testimony regarding the repetition of allegations against him did not violate the "first complaint" doctrine, where the defendant's multiple inculpatory statements in the presence of various people were admissible for an independent purpose; moreover, although other conversations, admitted allegedly to provide "context" but not necessary to explain the obvious reason why the people involved engaged in an accusatory conversation with the defendant, or to address any other relevant issue, violated the first complaint doctrine, the error created no prejudice, in view of the overwhelming evidence presented by the Commonwealth, including multiple admissions of wrongdoing by the defendant; likewise, the admission of testimony from the victim that she spoke to someone in the district attorney's office and to a detective, although error, had but very slight effect, if any. [231-233]

At the trial of indictments charging the defendant with various sexual offenses, the judge did not err in admitting in evidence a photograph depicting the victim at the time of the assaults, where the photograph was relevant to the contested issue of constructive force. [233]

At the trial of indictments charging the defendant with various sexual offenses, no substantial risk of a miscarriage of justice arose from the prosecutor's unobjected-to reference in closing argument to the victim's multiple complaints, given the strength of the Commonwealth's case, the fleeting nature of the reference, and the judge's instruction that closing arguments were not evidence. [233]

At the trial of indictments charging the defendant with various sexual offenses, the judge did not abuse her discretion in declining to excuse a juror who disclosed that his son had been sexually assaulted twenty years earlier, where the judge observed the juror's demeanor and ascertained whether, given the juror's history, he could remain impartial. [233-234]

INDICTMENTS found and returned in the Superior Court Department on June 27 and November 14, 2008.

The cases were tried before *Barbara A. Dortch-Okara,* J.

*Iris Alkalay* for the defendant.

*Suzanne D. McDonough*, Assistant District Attorney, for the Commonwealth.

GRAINGER, J. The defendant was convicted by a Superior Court jury of two counts of rape of a child with force, one count of the lesser included offense of rape of a child, and one count of indecent assault and battery on a child under the age of fourteen. He contends on appeal that the admission of certain testimony violated the "first complaint" doctrine, and that his conviction should be reversed because of the judge's failure to exclude a juror for cause. The defendant also claims error in the admission of a photograph in evidence as well as certain statements made by the prosecutor during summation. We affirm.

*Background.* The evidence presented to the jury included the following. The defendant sexually abused a thirteen year old girl, whom we shall call Tina,[1] at a time when her sister was the defendant's girlfriend. In a brief conversation approximately one week later, Tina told a friend that the defendant had caused her to perform oral sex on him. The friend testified as the first complaint witness. A few days after this conversation, Tina and the friend confronted the defendant.[2] To this the defendant replied, "It can't leave this house, like nobody else can find out about this. . . . I understand that you had to tell [the friend], . . . but nobody else can find out about this."

The defendant also acknowledged his guilt on two other occasions. First, Tina, her father, and her mother confronted the defendant about four years after the event, and each parent testified at trial that the defendant admitted to them on that occasion that he had been "inappropriate" with their daughter and that he apologized to her. The defendant's girlfriend also testified that the defendant told her that "he had really made a mistake," that Tina had put her hand on his crotch and down his pants, and that she had kissed him first. The defendant's girlfriend testified further that the defendant asked her whether she would visit him and write to him if he went to jail.[3] We reserve further details for our discussion of specific issues.

---

[1] A pseudonym.

[2] At trial the friend also confirmed this conversation.

[3] In a separate incident, after Tina's brother confronted him at his apartment, the defendant told his girlfriend that Tina "used to throw herself at him."

*First complaint.* The defendant does not dispute the admission of the first complaint made to the friend approximately one week after the assault. Rather, he argues that the judge's allowance of testimony regarding the repetition of those allegations, in several other instances, was violative of the first complaint doctrine. See *Commonwealth* v. *King*, 445 Mass. 217, 241-248 (2005), cert. denied, 546 U.S. 1216 (2006).

During trial, the prosecutor presented testimony from Tina as well as several other witnesses who testified to multiple conversations about the rape.[4] Testimony regarding conversations additional to the first complaint, even without the details of the complaint, will be inadmissible when it is "essentially the same as permitting those other witnesses to testify" and therefore admitting "fresh complaint testimony through the back door." *Commonwealth* v. *Stuckich*, 450 Mass. 449, 457 (2008). See Mass. G. Evid. § 413 (2011). However, the first complaint doctrine does not "prohibit the admissibility of evidence that, while barred by that doctrine, is otherwise independently admissible," so long as the judge carefully balances "the testimony's probative . . . value" and its prejudicial effect. *Commonwealth* v. *Arana*, 453 Mass. 214, 220-221, 229 (2009).

In the instant case, the defendant made multiple inculpatory statements in the presence of the friend, Tina's parents, and his own girlfriend. These conversations[5] therefore were admissible for an independent purpose. *Ibid.* The Commonwealth argues that the evidence of Tina's additional conversations with her

---

[4] In addition to the first complaint testimony involving Tina and the friend, the following conversations were part of the evidence presented to the jury: (1) Tina testified about a conversation in which she discussed the assault with the defendant when the friend was present; (2) Tina testified to a conversation with her sister and brother; (3) Tina testified to a conversation with her mother, father, sister, and brother; (4) Tina testified that immediately after the conversation with her family, she and her parents confronted the defendant about the rape; (5) Tina testified to a preliminary conversation when she first arrived at the police station; and (6) she testified that she was interviewed by a detective. In addition, (7) Tina's sister testified that she had a conversation with Tina and their brother; (8) Tina's mother and father testified regarding a conversation with Tina; (9) Tina's mother and father also testified about their confrontation with the defendant; and (10) the defendant's girlfriend testified about the confrontation between Tina, her parents, and the defendant at his apartment.

[5] These conversations are numbered 1, 4, 9, and 10 in note 4, *supra.*

family prior to their various confrontations with the defendant also were admissible in these circumstances to lay the foundation for the defendant's incriminating statements — and not simply a repetition of the complaint used to reinforce Tina's credibility. See *Commonwealth* v. *Kebreau,* 454 Mass. 287, 300 (2009) (no error where "testimony was not offered as first complaint testimony, but rather to provide context for the defendant's admissions"). We are, however, unwilling to approve what this record shows to be an excessive number of conversations[6] providing "context," none of which were necessary to explain the obvious reason why the family and the friend engaged in an accusatory conversation with the defendant, or to address any other relevant issue. In *Commonwealth* v. *Aviles,* 461 Mass. 60 (2011), the Supreme Judicial Court considered similar claims of "context" and noted that "the additional portions of the statement must be . . . part of the same conversation . . . and . . . necessary to the understanding of the admitted statement." *Id.* at 75, quoting from *Commonwealth* v. *Eugene,* 438 Mass. 343, 350-351 (2003). A person who confronts a suspect with allegations of misconduct obviously has been told about them previously.

The admission in evidence of these additional conversations violated the first complaint doctrine. However, in view of the overwhelming evidence presented by the Commonwealth, including multiple admissions of wrongdoing by the defendant, we conclude that the error created no prejudice.[7,8] As set forth *supra,* the defendant admitted his wrongdoing on at least four different occasions to an audience consisting variably of Tina, her friend, her father, her mother, and his own girlfriend.

The admission of testimony by Tina that she spoke to someone in the district attorney's office and to a detective benefits from no claim of context and was also error. See *Commonwealth* v.

---

[6]These conversations are numbered 2, 3, 7, and 8 in note 4, *supra.*

[7]*Aviles, supra* at 72-73, establishes an abuse of discretion standard for the admission of subsequent complaint evidence. Because we conclude that the evidence of so-called "contextual" conversations did not prejudice the defendant, our result remains unaffected.

[8]The record suggests, albeit inconclusively, that objections to almost all of the conversations following the first complaint were preserved. We review all of them under the prejudicial error standard.

*Stuckich,* 450 Mass. at 457 (2008) ("The fact that the Commonwealth brought its resources to bear on this incident creates the imprimatur of official belief in the complainant. It is unnecessary and irrelevant to the issue of the defendant's guilt, and is extremely prejudicial"). Again, we refer to the strength of the Commonwealth's evidence as a whole and note as well that the reference to the two conversations during the prosecutor's closing was fleeting. Accordingly, the defendant was not prejudiced, as the evidence had "but very slight effect," if any. *Commonwealth v. Flebotte,* 417 Mass. 348, 353 (1994), quoting from *Commonwealth v. Peruzzi,* 15 Mass. App. Ct. 437, 445 (1983).

*Admission of photograph.* At trial, the prosecution introduced a photograph of Tina from the time when the rape occurred, several years before the trial, to which the defendant objected as appealing to the jury's emotions. This was not error, as demonstrative evidence of Tina's relative size and immaturity, such as the photograph at issue, was relevant to the element of constructive force, a contested issue in the case, and was not unduly prejudicial. See, e.g., *Commonwealth v. Armstrong,* 73 Mass. App. Ct. 245, 255 (2008).

*Closing argument.* The defendant argues on appeal that the prosecutor's closing improperly referred to Tina's multiple complaints to bolster her credibility. The defendant's trial counsel did not object or request a curative instruction. "Although not dispositive of the issue, the absence of any such request from experienced counsel is some indication that the tone, manner, and substance of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial." *Commonwealth v. Toro,* 395 Mass. 354, 360 (1985). We note as well that the references were brief, that they were made largely to refute the defense that Tina fabricated the assault, and that the prosecutor's closing emphasized the defendant's multiple admissions. Furthermore, the judge instructed the jury that the closings were not evidence. As noted, *supra,* the evidence of the defendant's guilt was strong and pervasive. Even if error, there was no substantial risk of a miscarriage of justice.

*Jury selection.* Finally, the defendant alleges error because the judge did not excuse a juror who disclosed that his son had

been sexually assaulted twenty years earlier.[9] In the arena of jury selection, judges are afforded "a large degree of discretion." *Commonwealth* v. *Vann Long*, 419 Mass. 798, 803 (1995). In *Commonwealth* v. *Seabrooks*, 433 Mass. 439, 443 (2001), the judge did not excuse a juror who had stated that she had an "initial emotional response" and felt "differently about a child being harmed." The court upheld the decision because the "judge explored the grounds for any possible claim that [the] juror [could not] be impartial, and . . . determined that [the] juror [stood] indifferent." *Ibid.* Similarly, here, the judge observed the juror's demeanor and asked the juror if, given his history, he could be impartial. To this, the juror responded that he could be fair and that he would not automatically side with either party. We find no abuse of discretion.

*Judgments affirmed.*

---

[9]Members of the same district attorney's office also prosecuted the case involving the juror's son.