NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-857

COMMONWEALTH

vs.

DEREK MOORE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Boston Municipal Court, the defendant, Derek Moore, appeals from his convictions on three counts of indecent assault and battery on a child.  We affirm.

Background.  In a relationship with the victim's mother, the defendant lived at times with the mother and the victim who considered the defendant "a father-figure" and "step-father," and called him "dad."  When the victim was between the ages of eleven and twelve, the defendant, on three separate occasions, touched her breasts, buttocks, and vaginal area.  The victim testified that she reported these events to her foster mother who testified as the first complaint witness.  No other witnesses testified.

Discussion. 1. Reports to mother and grandmother. Under the first complaint doctrine, evidence of the victim's report of abuse is limited to "the first person told of the sexual assault." Commonwealth v. Aviles, 461 Mass. 60, 68 (2011). "The first complaint doctrine does not, however, 'prohibit the admissibility of evidence that, while barred by that doctrine, is otherwise independently admissible.'" Id., quoting Commonwealth v. Arana, 453 Mass. 214, 220-221 (2009). The victim testified, without elaboration, that she also "informed" her mother and told her grandmother "what happened." For the first time, the defendant now contends that this testimony violated the first complaint doctrine and was highly prejudicial and lacked any probative value. We disagree and discern no error and no "substantial risk of a miscarriage of justice." Commonwealth v. McCoy, 456 Mass. 838, 846 (2010).

Under the first complaint doctrine, the victim's testimony that she reported the abuse to her mother and grandmother was inadmissible, but such evidence was otherwise admissible "to rebut the defendant's suggestion that [the victim] had fabricated her accusations against him." Aviles, 461 Mass. at 67. Here, anticipating the victim's testimony, defense counsel challenged her credibility and motivation through his opening statement in which he suggested that the complaint to the foster mother sprang from a complex "family dynamic" in which the

2

victim sought to escape an unpleasant homelife with her mother and the defendant.  Defense counsel theorized that the victim contrived the allegations of abuse and made the report to the foster mother "to make sure she doesn't have to be in [the defendant's] custody any longer."  The prosecutor could properly rebut this assertion by showing that the report was not a contrivance aimed at enlisting the help of the foster mother to escape the family dynamic because the victim also later revealed the abuse to her mother and grandmother.  See Aviles, 461 Mass. at 67.  With respect to the report made to the mother, we also note that defense counsel logically did not object because the victim also testified that her mother did not believe her and remained in a relationship with the defendant.

2.  Discussions with others.  We also discern no error and no substantial risk of a miscarriage of justice from the foster mother's testimony that she told the victim she was a "mandated reporter" and would be required to report allegations of abuse to the Department of Children and Families (DCF).  Contrary to the defense claim on appeal, this testimony was not gratuitous but constituted part of the first complaint conversation between the victim and the foster mother.  See Commonwealth v. King, 445 Mass. 217, 243 (2005) (first complaint witness "may testify to the details of the alleged victim's first complaint of sexual

assault and the circumstances surrounding that first complaint").

We agree with the defendant that the foster mother should not have testified that she reported the matter to DCF. See Commonwealth v. Kebreau, 454 Mass. 287, 298 (2009) (error to admit testimony that first complaint witness contacted Department of Social Services); Commonwealth v. Stuckich, 450 Mass. 449, 451, 456 (2008) (same). Such testimony "has no relevance to whether the defendant in fact committed the acts charged." Stuckich, supra at 457. We discern, however, no substantial risk of a miscarriage of justice. See Commonwealth v. Kebreau, 454 Mass. at 298. The foster mother's brief reference to the report "could have had slight, if any, effect on the outcome" here because it was clear she was simply following her obligation as a mandated reporter and not suggesting that she believed the victim. Id. Unlike the situation presented in Stuckich, supra at 456, where the first complaint witness testified that she filed a report and also "testified that she believed [the victim's] allegations," the foster mother here "did not create a strong impression" that she believed the allegations. Kebreau, supra.

The defendant also contends for the first time that the victim's testimony "made plain that government officials credited" the allegations because she testified that she met

4

with "a lot of people" and discussed "if I wanted to press charges." Even if it unnecessarily implied "how the complaint of abuse evolved into the case before them," this testimony did not indicate that government officials credited the allegations. Stuckich, 450 Mass. at 457. The absence of any objection underscores that this testimony could have been understood to mean that the victim's ultimate objective was simply to avoid returning home with her mother and the defendant rather than to seek criminal charges. As defense counsel put it in his closing argument, the allegations were concocted so that the victim "did not have to go back with [the defendant] and did not have to go back with her mother." Thus, such testimony by the victim, even if improperly admitted, did not create a substantial risk of a miscarriage of justice.

3. Background of first complaint witness. We disagree with the defendant's contention, raised for the first time on appeal, that the first complaint witness created a "veneer of expert validation" by testifying that she was a member of the Boston City Council, had a background as a mental health professional, and had rigorous training to become a specialized foster parent. Testimony of a first complaint witness may include "relevant conditions that might help a jury assess the veracity of the complainant's allegations or assess the specific defense theories as to why the complainant is making a false

5

allegation."  <u>King</u>, 445 Mass. at 246.  These conditions "may be critical" to jurors evaluating "the validity of the complaint and may be helpful in assisting them in understanding the timing of and motivations underlying the complaint."  <u>Id</u>.  See, e.g., <u>Commonwealth</u> v. <u>Calderon</u>, 65 Mass. App. Ct. 590, 595 (2006) (under former fresh complaint doctrine no error where testimony "included background information about the social worker's duties and how she became involved in the case").  Especially where the victim in this case was described as "very autistic," the witness' background information and communication skills constituted part of the "complete picture" that would enable jurors to make a fair and accurate assessment of the victim's accusation.  <u>King</u>, 445 Mass. at 247.  Neither the testimony of the first complaint witness nor the argument of the prosecutor suggested that the first complaint witness had any expertise in determining whether the victim had been abused.  We discern no error and no substantial risk of a miscarriage of justice from the first complaint witness' testimony about her background.

4.  <u>Limiting instruction</u>.  When first complaint testimony is presented, limiting "instructions should be given to the jury contemporaneously with the first complaint testimony, and again during the final instructions."  <u>King</u>, 445 Mass. at 248.  Here, just before the first complaint witness testified, the judge provided the limiting instruction set forth in the <u>King</u> case.

6

The judge repeated the limiting instruction in his final charge to the jury. On appeal, the defendant claims for the first time that the limiting instruction should also have been provided during the testimony of the victim. Given the fulsome and repeated limiting instructions provided by the judge, we discern no substantial risk of a miscarriage of justice from the absence of a third recitation of the limiting instruction.

5. <u>Prosecutor's closing argument</u>. For the first time, the defendant takes issue with two remarks by the prosecutor in her closing argument. We discern no error and no substantial risk of a miscarriage of justice.

The defendant contends that the prosecutor referred to facts not in evidence and "implied expertise" by stating children often delay disclosure of sexual assaults. Read in context, the prosecutor stated, "You have the testimony of the first complaint witness. And that is why she was able to testify today under circumstance[s] like this. Because a child often will disclose something later on in their life." This argument is consistent with the judge's limiting instruction on first complaint evidence: "The length of time between the alleged crime and the report [of] the complainant to this witness is one factor you may consider in evaluating the complainant's testimony. But you may also consider that <u>sexual assault complainants may delay reporting the crime</u> for a variety

7

of reasons" (emphasis added).  Given the context of the remark and the judge's similar language in the limiting instruction, there was no reference to expert opinion that was not in evidence.

Next, the defendant contends that the prosecutor improperly argued without evidentiary support that the defendant sought out the victim as a sexual alternative to the victim's mother.  The prosecutor asked jurors to remember the state of the relationship between the defendant and the victim's mother.  That relationship consisted of "always fighting," "always arguing," "always yelling," and the relationship was "on and off."  The prosecutor then said, "Now don't forget that.  What their relationship is like and how it left [the victim] by herself.  There's plenty of time, opportunity for them to be alone with each other.  Now if [the victim's mother] was not giving [the defendant] what - what he wanted, [the victim] was there."  We discern no error because this argument was based upon evidence before the jury, and the prosecutor could properly argue inferences pertaining to a motive and opportunity to commit the crimes.  "[P]rosecutors are entitled to marshal the evidence and suggest inferences that the jury may draw from it." Commonwealth v. Drayton, 386 Mass. 39, 52 (1982).  Inferences need not be "inescapable" and "need only be reasonable and possible."  Commonwealth v. Roy, 464 Mass. 818, 824, 829 (2013).

8

Even if the remarks could be construed as referring to facts not in evidence, the judge provided instructions that would obviate any substantial risk of a miscarriage of justice. See Commonwealth v. Pearce, 427 Mass. 642, 646 (1998). At the beginning of the trial, the judge told jurors that "closing arguments of the attorneys, like their opening statements, are not evidence." In his final charge, the judge informed jurors to confine their deliberations to the evidence, including testimony of the witnesses and exhibits. He also repeated his earlier instruction, "The opening statement and closing arguments of the attorneys are not a substitute for the evidence." Given the context of the arguments and the judge's careful instructions, we are satisfied that the prosecutor's remarks did not create a substantial risk of a miscarriage of justice.

6. Response to jury question. As a final claim of error, the defendant, though satisfied at trial, now contends that the judge provided an improper response to jury questions during deliberations. Jurors asked who the victim has been living with and where since leaving the foster mother's care, whether there was a possibility that the victim would return to the defendant's custody, and whether the victim was aware of a possibility of returning to the defendant's custody. After conferring with counsel and obtaining the agreement of counsel,

9

the judge responded, "All the evidence in this case has been put before you. You have everything you need to make a decision. Thank you very much." On appeal, the defendant claims that these questions indicated jurors were considering extraneous matters, the judge should have forcefully instructed them not to do so, and the judge should have told them that custody decisions would be adjudicated by the Probate and Family Court, with input from DCF, and any decision would be made in the child's best interest. We discern no error and no substantial risk of a miscarriage of justice. See Commonwealth v. Ridley, 491 Mass. 321, 333 (2023). A judge has broad discretion to formulate a response to a jury question. Id. The supplemental instruction here was well within that range of discretion and reminded jurors of their obligation to consider only evidence that had been presented.

After careful review of the record and the arguments presented, we discern no error or combination of errors that

creates a substantial risk of a miscarriage of justice.

Judgments affirmed.

By the Court (Ditkoff,
Singh & Hodgens, JJ.[1]),

Clerk

Entered:  September 26, 2024.

---

[1] The panelists are listed in order of seniority.