COMMONWEALTH *vs.* HASSAN HANINO.

No. 09-P-1104.

Essex. February 9, 2012. - September 26, 2012.

Present: COHEN, BROWN, & FECTEAU, JJ.

*Rape. Indecent Assault and Battery. Minor. Evidence,* First complaint, Impeachment of credibility. *Witness,* Impeachment, Corroboration. *Practice, Criminal,* Argument by prosecutor.

Discussion of the development of the first complaint doctrine and the standard of review of a claim of error in the admission of such evidence. [492-494]

At the trial of indictments charging rape of a child and indecent assault and battery on a child under fourteen, there was no error in the admission of testimony by the victim that she had tried but failed to tell her mother about the abuse, where it was not evidence of a complaint but, rather, evidence of her inability to make a complaint. [495]

At the trial of indictments charging rape of a child and indecent assault and battery on a child under fourteen, no substantial risk of a miscarriage of justice arose from the admission of testimony by the victim that she "spoke with" police, where, given that the testimony was cumulative of unchallenged testimony by the Commonwealth's first complaint witness, and that the testimony was unaccompanied by any evidence of actions taken by the police suggesting that they immediately credited the victim, it could not be fairly concluded that the defendant was harmed or that his counsel's failure to object was not a reasonable tactical decision. [495-496]

At the trial of indictments charging rape of a child and indecent assault and battery on a child under fourteen, no substantial risk of a miscarriage of justice arose from the victim's testimony about a conversation with her uncle and older brothers, where it was relevant and independently admissible to rebut the defense contention that the victim had recanted. [496]

At the trial of indictments charging rape of a child and indecent assault and battery on a child under fourteen, the judge did not abuse her discretion in the admission of testimony by two police officers who met with the victim and the first complaint witness on the night of the victim's disclosure, where the officers' testimony was highly probative on the independent issue of the credibility of the first complaint witness, and was necessary for the fair consideration of the Commonwealth's case. [497-498]

At a criminal trial, there was no error in the prosecutor's closing argument. [498]

INDICTMENTS found and returned in the Superior Court Department on May 14, 2003.

The cases were tried before *Elizabeth M. Fahey*, J.

*Karl R.D. Suchecki* for the defendant.

*David F. O'Sullivan*, Assistant District Attorney, for the Commonwealth.

COHEN, J. As a result of his daughter's disclosure that she was being sexually abused, the defendant was charged and later convicted of two counts of rape of a child, G. L. c. 265, § 23A, and two counts of indecent assault and battery on a child under fourteen, G. L. c. 265, § 13B. On appeal, he claims that certain testimony was admitted in violation of the first complaint doctrine, and that portions of the prosecutor's closing argument were improper. We affirm.

*Background.* The Commonwealth's evidence established that in April, 2003, the victim was twelve years old and living in Marblehead with her father, her two brothers, and her father's girlfriend, Nancy. Her father and Nancy had an argument, which prompted Nancy to leave the house. The victim, who was very fond of Nancy, followed Nancy to her car, began crying, and asked Nancy not to go without her. The victim informed Nancy that her father had been molesting her, and that he had told her not to reveal the abuse.

Nancy drove the victim to Nancy's sister's house in Salem, where they called the Salem police. Sergeant Richard Gagnon arrived, and both the victim and Nancy spoke to him. Nancy was directed to take the victim to the Marblehead police station, which she did. There, Nancy and the victim spoke with Sergeant Marion Keating. Afterwards, Nancy and the victim stayed at Nancy's sister's house for one or two days. Then, the victim, along with the younger of her two brothers, was moved to a foster home and eventually placed in the custody of their biological mother. Despite being pressured by her older brother and her paternal uncle to recant, the victim never did so.

Within a week of the victim's disclosure, Nancy moved back into the defendant's home and soon broke off her relationship with the victim. Nancy married the defendant later that year and subsequently had two children with him. By the time of trial, Nancy and the defendant were legally separated. However, according to Nancy, the separation was a condition imposed by

the Department of Social Services[1] in order for Nancy to retain custody of her children; she loved the defendant and intended to remain married to him.

Prior to trial, the Commonwealth moved in limine to present Nancy as the designated "first complaint" witness. See *Commonwealth* v. *King*, 445 Mass. 217, 237-249 (2005), cert. denied, 546 U.S. 1216 (2006). There was no objection from the defendant, and Nancy was so designated. At that time, the prosecutor alerted the judge to the possibility that Nancy would be a reluctant witness because of her relationship to the defendant.[2] This turned out to be the case.

During direct examination, Nancy claimed not to recall significant aspects of the circumstances and details of the victim's first complaint: that the victim was crying and banging on her car window while pleading with her not to leave; that the victim revealed that the defendant had penetrated her vagina with his finger; and that the victim said that the defendant had told her not to disclose the sexual abuse. Contradicting the victim's testimony, Nancy also stated that, in May, 2005, the victim told Nancy that the accusation was a lie.

At the prosecutor's request, the judge found that Nancy was feigning loss of memory in order to avoid testifying to the details most damaging to the defendant. The judge therefore permitted the prosecutor to impeach Nancy with the testimony of the two police officers who met with the victim and Nancy on the night of the victim's disclosure.

The defendant's theory of the case — explained at the outset in counsel's opening statement and pursued throughout the trial — was that the victim had fabricated her allegations because she thought Nancy was leaving the house for good and wanted to be able to stay with her. The defendant also maintained that, at the time of the victim's disclosure, she was angry at her father for punishing her by forbidding her from going to a

---

[1]It has since been renamed the Department of Children and Families.

[2]After this case was tried it was clarified that the Commonwealth has the option of requesting the judge to substitute a different first complaint witness when the first person to hear the complaint of sexual assault "has an obvious bias or motive to minimize or distort the victim's remarks." *Commonwealth* v. *Murungu*, 450 Mass. 441, 446 (2008).

social event that she was looking forward to attending, and that she later recanted both to Nancy and to her (the victim's) older brother, who testified for the defense.

*Discussion.* 1. *First complaint.* The defendant's trial took place in April, 2006, after the announcement of the first complaint doctrine in *Commonwealth* v. *King, supra,* but before any additional development of the doctrine in our case law. With the benefit of later cases, we review the defendant's first complaint arguments guided by the clarifications that have evolved while this appeal was pending.[3]

The first complaint doctrine generally precludes the introduction of testimony from more than one witness concerning a victim's reports of a sexual assault; however, evidence of additional complaints may be admitted "if the judge determines that the evidence is otherwise independently admissible, serves a purpose other than to corroborate the victim's testimony, and its probative value outweighs its prejudicial effect." *Commonwealth* v. *Hoyt,* 461 Mass. 143, 157 n.13 (2011) (quotation omitted). Accordingly, the admission of multiple complaints has been approved where the evidence served an independent purpose and, in view of the defense strategy, was necessary to present a fair and accurate picture of the Commonwealth's case. See *Commonwealth* v. *Arana,* 453 Mass. 214, 229 (2009); *Commonwealth* v. *Monteiro,* 75 Mass. App. Ct. 489, 495-496 (2009).

Where feasible, the first complaint witness will be the first person told of the sexual assault, and that witness may testify to the details of the first complaint and the circumstances attending that complaint as part of the prosecution's case-in-chief. *Commonwealth* v. *Aviles,* 461 Mass. 60, 67-68 (2011), citing *Commonwealth* v. *King, supra* at 242-243. "[T]he complainant also may testify about the details of the first complaint and the reasons why it was made at that particular time"; however, the complainant may not "testify to the fact that she 'told' others,

---

[3]Judgment entered on July 19, 2006, and a timely notice of appeal was filed on August 15, 2006. The appeal was delayed for two years while the transcript was being prepared and for fifteen additional months while the case was stayed to enable the defendant to file a motion for a new trial. No such motion was filed, and eventually, the defendant moved to vacate the stay. After numerous extensions of time, briefing was completed in September, 2011. The case was argued in the ordinary course in February, 2012.

apart from the first complaint witness, about the sexual assault, even where the details [are] omitted." *Id.* at 68.

The first complaint doctrine is not an "evidentiary rule"; rather, it is "a body of governing principles to guide a trial judge on the admissibility of first complaint evidence." *Id.* at 72-73. These governing principles serve the important purpose "of maintaining a balance between the interests of a complainant (who still may be a child) 'in having her credibility fairly judged on the specific facts of the case' and the interests of a defendant 'in receiving a trial free from irrelevant and potentially prejudicial testimony.' " *Id.* at 73, quoting from *Commonwealth v. Arana, supra* at 228.

Because the trial judge "is in the best position to determine the scope of admissible evidence, keeping in mind the underlying goals of the first complaint doctrine, our established first complaint jurisprudence, and our guidelines for admitting or excluding relevant evidence," an appellate court will review the trial judge's decisions on the admission of complaint evidence only for abuse of discretion. *Ibid.*[4] When claiming an abuse of discretion, the defendant assumes a heavy burden; "[w]e do not disturb the judge's ruling 'simply because [we] might have reached a different result; the standard of review is not substituted judgment.' " *Cruz v. Commonwealth*, 461 Mass. 664, 670 (2012), quoting from *Bucchiere v. New England Tel. & Tel. Co.*, 396 Mass. 639, 641 (1986).

If the judge was not given the opportunity to exercise discretion because the defendant failed to raise an objection, we review under the even more demanding "substantial risk of a miscarriage of justice" standard. See *Commonwealth v. Roby*, 462 Mass. 398, 409-410 (2012). "In analyzing a claim under the substantial risk standard, we review the evidence and case as a whole and ask four questions: '(1) Was there error?[5] . . . (2) Was the defendant prejudiced by the error? . . . (3) Con-

---

[4]We do not understand *Aviles, supra,* to suggest, however, that we review only for abuse of discretion if the evidence has been challenged not only for nonconformity with the first complaint doctrine but also for violation of a full-fledged "evidentiary rule" or other principle of law subject to a higher standard.

[5]Where, as here, the challenge is to the admission of evidence subject to review only for abuse of discretion, and the judge was never given the op-

sidering the error in the context of the entire trial, would it be reasonable to conclude that the error materially influenced the verdict? . . . (4) May we infer from the record that counsel's failure to object or raise a claim of error at an earlier date was not a reasonable tactical decision?' " *Commonwealth* v. *McCoy*, 456 Mass. 838, 850 (2010), quoting from *Commonwealth* v. *Randolph*, 438 Mass. 290, 298 (2002). "Relief under this standard is seldom granted, and may only be granted where the answer to all four above questions is, 'Yes.' " *Ibid.*

With these principles in mind, we turn to the defendant's arguments that the first complaint doctrine precluded the admission of portions of the victim's testimony and of the impeachment testimony of the police officers to whom the victim and Nancy spoke on the night of the victim's disclosure.

a. *The victim's testimony.* The victim, who was fifteen years old at the time of trial, was the Commonwealth's first witness. She testified on direct examination that, over a period of years commencing when she was five or six years old and her biological parents were still living together, her father would come into her room at night, put his hand inside her pajamas, and move his finger around inside her vagina. This made her feel "bad" and "scared." She was afraid of her father because she had seen him physically abuse her mother (among other things, he broke a chair over her back) and would hit her older brother with a belt. The abuse continued until a week before she disclosed it to Nancy. During that last episode, her father specifically told her not to tell anyone about it.

Without objection from the defendant, the victim stated that she had "tried" to tell her mother about the abuse but did not do so because she was afraid of being disbelieved and of the consequences for the family. Again without objection from the defendant, the victim recounted the events of the night of her disclosure. She testified that, against her wishes, Nancy took her to the Marblehead police station where she "spoke with" a police officer in Nancy's presence, and both she and Nancy

---

portunity to exercise that discretion, the inquiry necessarily is hypothetical. We determine whether there was error by considering whether it would have been an abuse of discretion for the judge to admit the evidence had the issue been raised.

were crying. She further testified that she "spoke with" a Salem police officer at Nancy's sister's house, in the presence of Nancy and her sister. She offered no details of what she said to any individual apart from Nancy.

The victim also testified without objection that, in 2005, she had dinner with her older brother and her paternal uncle. They brought up the subject of her father and asked her if her allegations were true. She said, "[Y]es," and they started to cry. The victim then explained that, during later visits, her older brother and uncle would pressure her to recant. On one occasion, her uncle and Nancy appeared unexpectedly at her school, signed her out, and brought her to court where her father was present in the courtroom. She understood from her uncle that she was brought there to say that she had lied. However, despite the pressure, she never took back her allegations.

The defendant argues that three aspects of the victim's testimony violated the first complaint doctrine: the testimony that she "tried" to tell her mother but did not do so; the testimony that she "spoke to" the police officers; and the testimony about her conversation with her older brother and uncle when they asked her if her allegations were true. We employ the four-part test for substantial risk of a miscarriage of justice in reviewing these unpreserved claims.

Little need be said about the victim's testimony that she tried but failed to tell her mother. It was not evidence of a complaint; it was evidence of her inability to make a complaint. The victim's aborted attempt to divulge the abuse to her mother was admissible to explain the delay in her disclosure and the fears that inhibited her from revealing the abuse earlier. There was no error.

As to the victim's statements that she "spoke with" the police, such testimony was inconsistent with the general principle that the complainant may not testify on direct examination that she "told" others, notwithstanding the omission of any details. See *Commonwealth* v. *Stuckich*, 450 Mass. 449, 457 (2008). However, regardless of whether this was a clear violation of the first complaint doctrine, upon review of the case as a whole, we are confident that the defendant suffered no harm. The evidence was cumulative of Nancy's unchallenged testimony that she

took the victim to meet with the police, and it was unaccompanied by any evidence of actions taken by the police suggesting that they immediately credited her. Furthermore, the defendant used the evidence to advantage — emphasizing that the victim's admitted reluctance to be taken to speak with the police showed that her allegations were false. Where, as here, the defendant used the challenged evidence in order to advance his defense, we cannot fairly conclude that he was harmed or that his counsel's failure to object was not a reasonable tactical decision. See *Commonwealth* v. *McCoy*, 456 Mass. at 850-853. There was no substantial risk of a miscarriage of justice.

Nor was there any substantial risk of a miscarriage of justice arising from the victim's testimony about her conversation with her uncle and older brother. While this testimony was not admissible on direct examination as complaint evidence, it was relevant and independently admissible to rebut the defense contention — probed during cross-examination of the victim and later advanced in the testimony of Nancy and the victim's older brother — that the victim had recanted. The inquiries from the victim's uncle and older brother, their distraught reaction to her affirmation of the abuse, and the pressure they later brought upon her to state that she was lying would have been admissible on redirect examination of the victim or in rebuttal. Accordingly, there was no prejudice to the defendant and, hence, no substantial risk of a miscarriage of justice was created. See *Commonwealth* v. *Aviles*, 461 Mass. at 69-70.

b. *The police officers' testimony.* In light of Nancy's claimed inability to remember significant details of the first complaint, the prosecutor asked the judge to find that Nancy's memory loss was feigned, and sought leave to elicit testimony from Sergeant Gagnon about Nancy's statements to him on the night of the victim's disclosure. The judge found that Nancy had "an avoidance of memory and no recall on anything that was critical," and after informing the jury that the ensuing testimony would be admitted only for the limited purpose of their consideration of Nancy's credibility, the judge allowed Gagnon to testify about what Nancy reported to him about the events immediately preceding her contact with the police.

Gagnon testified that Nancy told him that the victim came

running out of the house crying and banged on her car window; that the victim said that she needed to speak to her; and that, after expressing fear that she would get into trouble and stating that she had promised her father that she would not say anything, the victim told Nancy that the defendant had been placing his fingers inside her vagina. Defense counsel repeatedly objected and moved to strike the testimony. He then moved for a mistrial, which was denied.

Thereafter, Sergeant Keating also testified that Nancy told her that the victim had cried and begged her not to leave, and that the victim had said that the defendant placed his fingers in her vagina. Again, the judge instructed the jury that the testimony was admissible only for the limited purpose of assisting in the evaluation of Nancy's credibility, and not for its truth.

The defendant argues that it was prejudicial error for the judge to allow the two officers to testify, in effect, as additional complaint witnesses. We conclude, however, that the judge acted well within her discretion in admitting the officers' testimony. While the first complaint doctrine was adopted to ameliorate the unfair prejudice to the defendant from the "piling on" of multiple complaint witnesses, *Commonwealth* v. *Murungu*, 450 Mass. 441, 442-443 (2008), it does not exclude testimony that is admissible for a purpose "other than to repeat the fact of a complaint and thereby corroborate the complainant's accusations." *Commonwealth* v. *Arana*, 453 Mass. at 229. See *Commonwealth* v. *Aviles*, *supra* at 69. Here, that purpose was the impeachment of Nancy.

A trial judge has considerable discretion to determine that a witness's testimony is inconsistent with prior statements, and to allow the use of the statements for impeachment. *Commonwealth* v. *Sineiro*, 432 Mass. 735, 742-743 (2000). "The tendency of unwilling or untruthful witnesses to seek refuge in a claim of forgetfulness is well recognized. Hence the judge may be warranted in concluding . . . the claimed lack of memory of the event is . . . an implied denial of the prior statement, thus qualifying it as inconsistent." *Id.* at 742 (citation omitted).

Here, the judge's finding that Nancy's memory loss was feigned in order to assist the defendant was well-supported by the evidence. See *id.* at 742 n.6. Nancy was married to the

defendant, had two children with him, loved him, and intended to remain married to him. Nancy severed her relationship with the victim shortly after her disclosure and showed a lack of recall only as to the facts that were most damaging to the defendant. Where the defense was predicated on claims of fabrication, and Nancy claimed, contrary to the victim's testimony, that the victim had recanted, Nancy's credibility was a material issue.

In sum, the police officers' testimony was not mere repetition of the fact of the victim's complaint. It was highly probative on the independent issue of Nancy's credibility and was necessary for the fair consideration of the Commonwealth's case. The judge did not abuse her discretion in admitting this evidence.

2. *Closing argument.* The defendant claims that the prosecutor's closing argument contained several errors, only one of which was the subject of an objection. During her closing argument, the prosecutor suggested that the testimony of the victim's older brother was "rehearsed to some extent," noting that a particular detail exactly matched Nancy's testimony. The defendant objected to the statement as an improper reference to the defendant's constitutionally protected right to prepare for trial. See *Commonwealth* v. *Ewing*, 67 Mass. App. Ct. 531, 542 (2006), *S.C.*, 449 Mass. 1035 (2007).

Although it would have been preferable had the prosecutor avoided the word "rehearsed," see *Commonwealth* v. *Haraldstad*, 16 Mass. App. Ct. 565, 574 (1983), there is a qualitative difference between implying that it is improper for counsel to prepare a witness and "casting doubt on testimony by calling attention to extraordinary parallels between what a group of witnesses who could talk to each other have said on the stand." *Ibid.* The thrust of the argument was that Nancy and the victim's older brother had coordinated their testimony in order to support the defendant's case. This tactic did not implicate the defendant's right to have his counsel prepare a witness, see *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 50 (1976), and the judge did not err in overruling the defendant's objection and declining to provide a curative instruction.

The defendant also challenges several statements by the prosecutor to which he failed to object at trial. Read in context and in light of the instructions given by the judge, we discern

nothing in these statements that created a substantial risk of a miscarriage of justice.

*Judgments affirmed.*