NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1470

COMMONWEALTH

vs.

EPHRAIM JEAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the Boston Municipal Court, the defendant, Ephraim Jean, was convicted of two counts of indecent assault and battery on a person over the age of fourteen, in violation of G. L. c. 265, § 13H.  On appeal, the defendant argues three claims of error, only one of which we address: that the Commonwealth improperly introduced evidence of the victim's complaints to multiple witnesses, in violation of the first complaint doctrine.  Because we conclude that the admission of multiple complaints was error creating a substantial risk of a miscarriage of justice, we vacate the judgments.

Background.  The seventeen year old victim testified that she went to the dentist to have her teeth cleaned and was treated by two dentists, one woman and one man.  While she was alone with the male dentist, he touched her crotch over her clothes for about forty-five seconds, moving his hand up and down; squeezed her left breast for "a quick second"; and rubbed his genitals against her arm.[1]  Throughout the victim's testimony, the judge and the prosecutor frequently had to ask her to repeat herself or speak up.  During a sidebar conference the judge explained that he was giving the prosecutor "a bit more leeway" in examining the victim given "the delicacy . . . of the witness' demeanor."

The victim also testified that she told many people about the incident.  She told her sister via text message "that the dentist did something to" her.  She talked to and answered questions from an employee at the dental clinic and a man from the Boston police department.  While being seen at a hospital after the alleged assaults, she told doctors "[w]hat had happened."  The defendant did not object during this portion of the victim's testimony.

The Commonwealth called the victim's younger sister as its first complaint witness.  According to the sister, the victim

_____

[1] The two convictions were based on the touchings of the victim's crotch and breast.

2

texted her that during the dental appointment "the dentist started touching her in areas where she didn't feel comfortable," specifically, that he touched her vagina and pressed his genitals against her arm. The sister also testified that because the victim was "too shy" to do so, the sister communicated to their father "that the person who was cleaning [the victim's] teeth was inappropriately touching her." The judge overruled the defendant's objection that this testimony, drawing in the victim's parents, exceeded the limits of the first complaint doctrine.

The defendant's attorney did not object, however, when two other Commonwealth witnesses repeated the victim's report of the incident. A Boston police officer testified that he responded to the dental clinic "for a report of a sexual assault," and the office manager reported to him that "a person was inappropriately touched while in the office." The officer spoke with the victim, who told him that the dental assistant "grabbed her chest," touched her vagina, and "rubbed his crotch on her elbow." The office manager testified that the victim's mother returned to the clinic after the appointment and told a receptionist that "the doctor back there touched my kid."

The Commonwealth also introduced medical records from the hospital where the victim was taken after the incident, which contained multiple accounts of the victim's report of the

3

alleged assaults and the chain of reporting. The records begin with the following narrative:

> "Patient reports that in exam room the dental assistant rubbed his genitals on her left arm, he was wearing pants at the time. Also reports that dental assistant touched her genital area over the pants . . . . Patient reportedly told her younger sister who then disclosed this information to father who then reported to mother what happened."

The records repeated the victim's description of events two more times. In addition, the records are rife with references to "sexual assault" and the police response, including a statement by the attending physician supervising the victim's care, who opined that "the most likely diagnosis is sexual assault." The defendant objected that the medical records contained the hearsay statements of the victim and her mother. He did not argue that the admission of the records violated the first complaint doctrine.

The Commonwealth also presented extensive evidence regarding the police investigation and arrest of the defendant. The medical records mention the defendant's arrest four times, and the clinic manager and the responding officer each stated -- in response to the prosecutor's questioning -- that the defendant was arrested at the dental clinic on the day of the incident. Moreover, a detective who participated in the Commonwealth's investigation of the defendant testified regarding the development of the case, including that the

4

investigation was triggered by "a report of a sexual assault" at the dental clinic and that he and two other officers interviewed "several witnesses" as part of the investigation, including the defendant and the victim's younger sister.  The defendant's attorney moved to exclude the entirety of the detective's testimony, but he did not cite the first complaint doctrine as the basis for the objection.

The defendant called as a witness the woman dentist who treated the victim.  She testified that the defendant, her regular dental assistant, helped her with a small filling on one of the victim's teeth.  The dentist said that she never saw the defendant touch the victim inappropriately and was "certain" that he did not.  The defendant testified in his own defense and denied that he inappropriately touched the victim during her appointment.

Discussion.  The defendant contends the admission of evidence of complaints beyond the victim's first report to her younger sister amounted to reversible error.

Where an issue is preserved by a timely objection at trial, we review the claim for prejudicial error, meaning that "the Commonwealth must show that any error did not influence the jury, or had but very slight effect" (quotation and citation omitted).  Commonwealth v. Dargon, 457 Mass. 387, 399 (2010). Where there was no objection at trial, we review the claim to

5

determine, first, whether error occurred, and second, whether that error created a substantial risk of a miscarriage of justice. See Commonwealth v. McCoy, 456 Mass. 838, 850 (2010). In this case, the defendant objected inconsistently to the evidence he now contends was admitted in violation of the first complaint doctrine. We need not resolve whether the defendant's claims were properly preserved, however, because our conclusion would be the same under either standard of review. See Commonwealth v. Lenane, 80 Mass. App. Ct. 14, 19 (2011). Accordingly, we will review all claims under the "more demanding" substantial risk of a miscarriage of justice standard. Commonwealth v. Hanino, 82 Mass. App. Ct. 489, 493 (2012).

Our inquiry proceeds in four steps: (1) whether there was error, (2) whether the defendant was prejudiced by that error, (3) whether it would be "reasonable to conclude that the error materially influenced the verdict," and (4) whether we can "infer from the record that counsel's failure to object or raise a claim of error at an earlier date was not a reasonable tactical decision." Dargon, 457 Mass. at 397, quoting McCoy, 456 Mass. at 850. "Only if the answer to all four questions is 'yes' may we grant relief." Commonwealth v. Randolph, 438 Mass. 290, 298 (2002).

6

1.  Was there error?  First, the admission of evidence of the victim's subsequent complaints, in the form of witness testimony and the victim's medical records, was error.  Under the first complaint doctrine, we "no longer permit in evidence testimony from multiple complaint witnesses, limiting the testimony to that of one witness -- the first person told of the assault."  Commonwealth v. King, 445 Mass. 217, 242-243 (2005), cert. denied, 546 U.S. 1216 (2006).  This is because "[t]he testimony of multiple complaint witnesses likely serves no additional corroborative purpose, and may unfairly enhance a complainant's credibility as well as prejudice the defendant by repeating for the jury the often horrific details of an alleged crime."  Id. at 243.  For the same reason, a complainant may not "testify to the fact that she 'told' others, apart from the first complaint witness, about the sexual assault, even where the details of the conversation have been omitted." Commonwealth v. Aviles, 461 Mass. 60, 68 (2011).  See Commonwealth v. Cruz, 98 Mass. App. Ct. 383, 387 (2020).

In this case, the Commonwealth presented evidence that repeatedly violated the first complaint rule.  In addition to the testimony of the designated first complaint witness, the victim's younger sister, the Commonwealth presented testimony from the responding police officer and the clinic manager, as well as the victim's medical records, all recounting the

7

victim's subsequent reports.[2]  The Commonwealth also elicited excessive testimony from the victim and her younger sister regarding when and how they "told" the victim's father, the dental clinic, the police, and the hospital staff about the incident.  "[K]eeping in mind the underlying goals of the first complaint doctrine, our established first complaint jurisprudence, and our guidelines for admitting or excluding relevant evidence," Aviles, 461 Mass. at 73, evidence concerning the victim's multiple complaints was erroneously admitted.

This error was compounded by the introduction of evidence regarding the defendant's arrest, which was similarly improper.

> "The fact that the Commonwealth brought its resources to bear on this incident creates the imprimatur of official belief in the complainant. . . .  It has no relevance to whether the defendant in fact committed the acts charged, and the jury did not need to know how the complaint of abuse evolved into the case before them."

Commonwealth v. Stuckich, 450 Mass. 449, 457 (2008).  The prosecutor mentioned the defendant's arrest multiple times in her opening statement and closing argument, questioned the dental clinic manager about the police response to the clinic and arrest of the defendant, and called two police witnesses who discussed the Commonwealth's investigation and arrest of the defendant.  Like the duplicative complaint testimony, this

_____

[2] The Commonwealth appropriately concedes that the police officer's testimony and the hospital records violated the first complaint rule.

evidence "undermines the purpose of the first complaint doctrine" and should not have been admitted.  Id. at 456.

2.  Was the defendant prejudiced by the error?  We readily conclude that these errors prejudiced the defendant.  See Stuckich, 450 Mass. at 457 ("Repetition of the narrative tends to enhance the credibility of the complainant to the prejudice of the defendant"); Commonwealth v. Lavalley, 410 Mass. 641, 646 (1991) ("The overuse or 'piling on' of evidence regarding the details of several fresh complaints may create the risk that the jury will use the details of the fresh complaints as substantive evidence that the crime actually occurred").  The record does not support the Commonwealth's argument that the defendant effectively used the erroneously admitted evidence to attack the victim's credibility, counteracting its prejudicial effect. Defense counsel did not cross-examine the victim with, or otherwise use, the multiple complaints to impeach her testimony. Indeed, it would have been nearly impossible to do so, as the multiple statements were consistent and served only to corroborate the victim's testimony.  Defense counsel's reference to the police officer's testimony in closing argument -- "You heard the officer testify.  At no point did the complaining witness speak about what allegedly happened to her" -- was contrary to the evidence and, if anything, harmful to the defendant.  The officer, in fact, repeated the victim's

9

statements on the scene, which were consistent with her trial testimony.

3. <u>Did the error affect the verdict</u>? The prejudicial effect of the repeated complaints was strong enough to have materially influenced the jury's ultimate verdicts. "In applying this standard, we analyze the potential impact of the error on the verdict and review the record to determine the strength of the Commonwealth's case, absent the improper evidence" (citations omitted). <u>Commonwealth</u> v. <u>Horne</u>, 476 Mass. 222, 228 (2017). While the Commonwealth's multiple complaint evidence was extensive, "[t]he evidence against the defendant was far from overwhelming." <u>Commonwealth</u> v. <u>Trowbridge</u>, 419 Mass. 750, 762 (1995). Due to the absence of corroborative physical evidence and the victim's difficulty testifying, the Commonwealth relied heavily on the testimony of the other witnesses to establish the victim's credibility. See <u>id</u>. The erroneously admitted evidence was unlikely to have gone unnoticed -- it came from no fewer than five witnesses and a written exhibit, and the prosecutor called each source to the attention of the jury in her closing argument.[3] The extent of the error in this case exceeded that in <u>Cruz</u>, 98 Mass. App. Ct. at 387-390, where we concluded that the admission of the

---

[3] As the prosecutor referred to record evidence that had been admitted for all purposes, the closing argument was proper.

10

victim's testimony about multiple complaints she made, coupled with hospital records with two additional accounts of the incident, created a substantial risk of a miscarriage of justice. "In a case such as this one, which turned on credibility, there is a particularly high probability of prejudice from the admission of duplicative complaint evidence." Id. at 389, quoting Commonwealth v. Monteiro, 75 Mass. App. Ct. 489, 497 (2009).

4. Did counsel withhold objection for tactical reasons? As to the fourth inquiry, we note that defense counsel objected to some, but not all, of the now complained-of testimony. "We can see no valid tactical reason for challenging some" instances of multiple complaint testimony, "but not others." Randolph, 438 Mass. at 299. Considering, too, the volume of the erroneously admitted evidence, its prejudicial effect on the defendant, and counsel's inability to use the evidence to the defendant's advantage, we can comfortably infer counsel's failure to object to the multiple complaints and the admission of the medical records was not a reasonable tactical decision. Contrast Hanino, 82 Mass. App. Ct. at 496 (defense's failure to object could have been reasonable tactical decision where "the defendant used the challenged evidence in order to advance his defense").

11

Conclusion.  The admission of the victim's multiple complaints was error creating a substantial risk of a miscarriage of justice.[4]

Judgments vacated.

Verdicts set aside.

By the Court (Massing, Hand & Allen, JJ.[5]),

*Paul Little*

Clerk

Entered:  December 5, 2025.

---

[4] The defendant's brief alleges two additional errors. First, he argues that the Commonwealth's late disclosure of the victim's text messages to her sister requires a new trial. Although the judge excluded the text messages as a sanction for the late disclosure, the defendant nevertheless argues that he was deprived of the opportunity to utilize that evidence to his benefit.  Second, he argues that the judge excluded a prospective juror for cause based on the juror's national origin, violating the defendant's right to an impartial jury of his peers and to the equal protection of the laws.  Because the judgments must be vacated on other grounds, and because neither of these issues is likely to recur at any retrial, we need not address either claim.  See Commonwealth v. Patry, 48 Mass. App. Ct. 470, 476 (2000).

[5] The panelists are listed in order of seniority.