# COMMONWEALTH *vs.* HAROLD LAWTON.

No. 10-P-2221.

Suffolk. February 7, 2012. - October 3, 2012.

Present: MILLS, MEADE, & RUBIN, JJ.

*Rape. Indecent Assault and Battery. Practice, Criminal,* Duplicative convictions, Argument by prosecutor, Jury and jurors. *Evidence,* First complaint, Expert opinion, Relevancy and materiality. *Witness,* Expert. *Jury and Jurors.*

At the trial of three indictments charging the defendant with rape of a child, the evidence was more than sufficient to establish that the defendant, on at least three occasions, put his tongue inside the victim's anus [532-533]; further, the defendant's convictions on three indictments charging indecent assault and battery on a child were not duplicative of the rape convictions, where the jury were properly instructed that each conviction had to be based on a separate and distinct act, and where the indecent assault and battery charges were in fact so based [533-534].

At the trial of indictments charging the defendant with rape of a child and indecent assault and battery on a child, the admission of testimony elicited during cross-examination of a defense witness did not violate the first complaint doctrine, where the judge previously had warned defense counsel that calling that witness might open the door to further disclosure of the victim's complaint, and defense counsel made a strategic choice in order to present a "no access" defense; where, after the defendant put the victim's credibility at issue by introducing, through the witness, the victim's prior inconsistent statements, the Commonwealth had the right to rehabilitate the victim, even though prior consistent statements by the victim were implicated; where the judge, to prevent any unfair prejudice to the defendant, limited the discussion of abuse disclosures; and where the judge instructed the jury that the witness's testimony was provided solely to assist them in evaluating the victim's credibility and was not independent evidence of the matters contained in the disclosures. [534-538] MILLS, J., dissenting.

At the trial of indictments charging the defendant with rape of a child and indecent assault and battery on a child, no error arose in the admission in evidence of testimony from an expert witness, where the subject matter of the expert's testimony was a sexual fetish that is well beyond the common experience of jurors, and where the description of the fetish was brief and not unfairly prejudicial to the defendant [538-539]; likewise, no error arose in the admission of a medical expert's testimony about child sexual abuse [539-540] or of an expert's testimony about delayed reporting [540].

At the trial of indictments charging the defendant with rape of a child and indecent assault and battery on a child, no prejudice to the defendant arose

from testimony by the first complaint witness that she cried in response to the victim's disclosures, where the judge instructed the jury to disregard the witness's reaction. [540-541]

At a criminal trial, the prosecutor, in closing argument, did not improperly vouch for the credibility of the victim in using a series of rhetorical questions, based on the evidence, to answer a question posed by defense counsel in his closing argument. [541-542]

At a criminal trial, the judge did not abuse her discretion in excusing a juror who had slept through the prosecutor's closing argument and during portions of the evidence and the final charge, where the judge patiently addressed the issue over the course of the trial, relied on her own observations and those of counsel, and conducted a voir dire of the juror. [542-544]

INDICTMENTS found and returned in the Superior Court Department on May 21, 2008.

The cases were tried before *Judith Fabricant*, J.

*Sharon Fray-Witzer* for the defendant.

*Anna E. Kalluri*, Assistant District Attorney (*Leora Joseph*, Assistant District Attorney, with her) for the Commonwealth.

MEADE, J. After a jury trial, the defendant was found guilty of three counts of rape of a child under the age of sixteen in violation of G. L. c. 265, § 23, and three counts of indecent assault and battery on a child under fourteen in violation of G. L. c. 265, § 13B. On appeal, the defendant raises a variety of arguments that question the validity of his convictions. Because none merits relief, we affirm.

1. *Background.* The Commonwealth's evidence was as follows. The victim was born in 1999. The defendant is his biological father. The victim lived with his mother, Vivian (a pseudonym), in a two-bedroom apartment. On occasion, the defendant would spend weekends there and sleep in Vivian's bedroom, but he did not live there. The defendant lived with his mother, Donna (a pseudonym), in a three-bedroom apartment. The victim would often spend weekends at Donna's apartment and sleep in a room that he would sometimes share with his cousins.

When the victim was five years old, the defendant began sexually abusing him. The first assault took place in his bedroom at Donna's apartment. The defendant removed the victim's pajamas and touched the victim's penis[1] with his hand. The

[1]The victim referred to his penis as his "dick" and his "private" on his "front" side.

defendant also "licked [the victim's] butt." As the defendant warned him, the victim did not tell anyone about this incident, but that made him "kind of sad."

On the evening of January 14, 2005, Vivian and the victim went to bed while the defendant was at work. When the defendant arrived at Vivian's apartment, he went into the victim's bedroom. The defendant took off the victim's pajamas and asked him "to poop on [the defendant's] hand." The defendant placed his hand on "the fat part of [the victim's] butt." The victim did not need to defecate, but went to the bathroom and urinated. Upon the victim's return to his room, the defendant told him to "try again." The victim laid down on the bed on his side while the defendant was behind him touching the "bottom of [his] butt."

At some point during the night, Vivian woke up to use the bathroom. When she came out of the bathroom, she heard a "moan" and went into the victim's bedroom. She saw the victim under the covers and the defendant lying next to him on top of the covers, and returned to her bedroom. On her way back to her room, Vivian heard a "kiddy moan" and she called the victim into her room. Both the victim and the defendant appeared at her doorway. Vivian asked what was wrong, to which the victim replied, "[N]othing." The defendant claimed he was "just tickling" the victim. The defendant explained that due to his snoring, he would remain in the victim's bed for the night so he would not wake up Vivian; Vivian went back to sleep.

On the way to the victim's school the next morning, the three went to Dunkin' Donuts. Vivian went inside and the defendant stayed with the victim in the car. Once alone, the defendant asked the victim if he "remember[ed] what happened last night." The victim said he remembered. When they arrived at the school, Vivian requested the victim's teacher, Tanya (a pseudonym),[2] to ask the victim about the previous night. Vivian did not disclose to Tanya what had transpired the night before.

Tanya, who testified as the first complaint witness, took the victim out of the classroom and asked him about what he had done the previous night. After telling Tanya that he had played some games the night before, Tanya told him that she loved him

---

[2]Vivian was also a teacher at the victim's school and Tanya was her friend.

and that he could trust her. The victim then disclosed that his "daddy [had been] playing with [his] butt." The victim said the defendant used his finger to play with his butt. The victim also disclosed that at the Dunkin' Donuts that morning, the defendant told him "not to tell . . . mommy because [the victim] would get in trouble." As a result of the victim's complaint, Vivian took the victim to be examined by a doctor and for a Sexual Abuse Intervention Network (SAIN) interview. The defendant moved out of Vivian's home.

In 2005, the Commonwealth initiated a prosecution of the defendant for his sexual abuse of the victim. That case was dismissed for lack of prosecution. Vivian explained that because the victim was so young, she did not want to see him go through the pain of testifying against his father. After the case was dismissed, Vivian and the defendant became friendly again, and the defendant was permitted to spend time with the victim at Donna's house every other weekend.

The reconciliation spawned additional abuse. The defendant continued "licking [the victim's] butt," and making more requests for the victim to defecate in the defendant's hands. When the victim was six years old, and staying at Donna's house, the defendant "licked" the "fat part" of the victim's "butt," and "inside [the victim's] butt." The victim felt "something wet" going into his "butt hole." The "licking" occurred "a few times" when the victim was five, six, and seven years old.

On one occasion when the victim was seven years old, and staying at Donna's house, the defendant pulled down the victim's pants and told him to "poop on the ground," where the defendant had placed a plastic bag. The victim told the defendant he had to use the bathroom, and the defendant followed him and stared at him, which occurred on a few occasions. The victim asked for some privacy and the defendant left. When the victim returned, the defendant again pulled down the victim's pajamas and told him to "poop on the plastic bag." The defendant was on his knees, holding up the victim's legs.[3]

On this same occasion, Donna woke up and decided to check on the victim. The defendant attempted to get Donna to return

---

[3]The victim illustrated this incident, and that drawing became an exhibit at trial.

to her room, but when she went into the defendant's bedroom, she saw the victim pulling up his pajama pants. When she asked why he was doing that, the victim told her that "daddy told me to poop on a plastic bag." Donna appeared to be shocked, and told the victim to go back to his room and not to tell anyone what had occurred.

Sometime after this incident, while Vivian walked the victim to the bus stop, he disclosed that the defendant "licked [his] butt." Vivian told the victim to tell her about it when he got back from school. Later that evening, the victim told Vivian "everything." In response to a scene in a movie Vivian and the victim were watching on television, the victim told her that "my father touches me on my private spots." The victim told her that "[h]e rubbed my penis. And when [I go] to the bathroom, he stands in the door and he watches me." As a result of this disclosure, Vivian brought the victim in for another SAIN interview in 2008.

Additional facts will be discussed in conjunction with the issues raised by the defendant.

2. *Discussion.* a. *Sufficiency of the evidence.* The defendant claims that there was insufficient evidence to support his three rape convictions.[4] We disagree. When analyzing whether the record evidence is sufficient to support a conviction, an appellate court is not required to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Commonwealth* v. *Velasquez*, 48 Mass. App. Ct. 147,

---

[4]The defendant also claims that there was a prejudicial variance between the proof at trial and his indictments because the victim may have testified to events in 2004 when he was five years old, outside the time period alleged in the indictments. We disagree. "A defendant shall not be acquitted on the ground of variance between the allegations and proof if the essential elements of the crime are correctly stated, unless he is thereby prejudiced in his defence." G. L. c. 277, § 35. Time is not an essential element of rape of a child, and it need not be precisely alleged. *Commonwealth* v. *King*, 387 Mass. 464, 467 (1982). In any event, the victim's testimony was not necessarily contrary to the indictments. The victim turned five on November 20, 2004. He testified that the first assault occurred when he was five years old and prior to his disclosure to Tanya. The indictments alleged that the crimes took place between January 1, 2005, and February 1, 2008. The defendant does not explain how his defense would have changed if the crimes were definitively claimed to have occurred in the six-week period prior to January 1, 2005. There was no prejudice.

152 (1999), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). See *Commonwealth* v. *Arias*, 78 Mass. App. Ct. 429, 433-434 (2010). Rather, the relevant "question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia, supra.*

When evaluating sufficiency, the evidence must be reviewed with specific reference to the substantive elements of the offense. See *Commonwealth* v. *Latimore, supra* at 677-678. To prove the crime of rape of a child in violation of G. L. c. 265, § 23, the Commonwealth must prove beyond a reasonable doubt that the defendant engaged in (1) sexual intercourse or unnatural sexual intercourse with (2) a child under sixteen years of age. *Commonwealth* v. *Miller*, 385 Mass. 521, 522 (1982). Unnatural sexual intercourse includes "anal intercourse . . . and other intrusions of a part of a person's body or other object into the . . . anal opening of another person's body." *Commonwealth* v. *Gallant*, 373 Mass. 577, 584 (1977).

The Commonwealth's evidence was more than sufficient to establish that the defendant, on at least three occasions, put his tongue inside the victim's anus. The victim testified that he felt "something wet" going inside his "butt hole," and that this "licking" occurred "a few times" when he was five, six, and seven years old. This evidence permitted a rational fact finder to conclude that the defendant raped the victim three times. See *Commonwealth* v. *Nylander*, 26 Mass. App. Ct. 784, 785-787 (1989).

b. *Duplicative convictions.* The defendant claims that his indecent assault and battery convictions may have been duplicative of his rape convictions. Because the defendant has raised this issue for the first time on appeal, we review only to determine whether a substantial risk of a miscarriage of justice was created. See *Commonwealth* v. *Vick*, 454 Mass. 418, 430 n.13 (2009). No such risk exists here where the jury were properly instructed that each conviction must be based on a separate and distinct act. See *Commonwealth* v. *King*, 445 Mass. 217, 225 (2005), cert. denied, 546 U.S. 1216 (2006). In addition, the prosecutor

explained that the three rape charges were based on the defendant penetrating the victim's anus with his tongue, and the indecent assault and battery charges were based on the defendant touching the victim's penis, touching the "fat part" of the victim's buttocks, and licking the "fat part" of the victim's buttocks. See *Commonwealth* v. *Mamay*, 407 Mass. 412, 418-419 (1990). To the extent the prosecutor misstated the law regarding specific unanimity, the judge cured it with her jury instruction on the subject, to which the defendant did not object.

c. *First complaint claims.* Prior to trial, defense counsel informed the judge he had listed the SAIN interviewer, Emily Rivera-Nunez, as a witness for the defense in the event the victim's testimony was inconsistent with what he had reported in the SAIN interviews. The judge asked counsel if he understood that by presenting the witness in this manner he would be opening the door to a second disclosure, and that he would not be objecting to the second disclosure. Counsel responded that he so understood.

At trial, in conjunction with a "no access" defense[5] and based on the victim's inconsistent accounts and his suggestibility, defense counsel devoted a substantial portion of his cross-examination of the victim to an attempt to impeach him with statements he made to Rivera-Nunez. Counsel continued this theme through his cross-examinations of Vivian and Dr. Amy Tishelman, a child psychologist who specializes in family violence.

After the Commonwealth rested, the defendant, as predicted, called Rivera-Nunez as a witness. According to Rivera-Nunez, during the 2005 interview, the victim reported that the defendant had touched him once, but during the 2008 interview, the victim said the improper touching occurred every time he spent the night at the defendant's home. Rivera-Nunez further testified that the victim told her that the defendant left bruises on his legs, and that both his mother and the defendant hit him. These statements were inconsistent with the victim's trial testimony regarding the frequency of the sexual abuse, the

---

[5]The defense attempted to show, through the testimony of Donna and the defendant's sister, that the defendant did not have unaccompanied access to the victim at many of the times of claimed abuse.

number of SAIN interviews that occurred, and the absence of physical abuse by either parent.

On cross-examination, in the course of testimony about proper interview techniques and avoiding suggestive questioning, Rivera-Nunez explained that she would begin an interview by asking the child if he knew why he was there. In this case, the victim replied that it was because his father "wanted him to do poo-poo on his hand." Defense counsel objected and argued that the prosecutor was improperly introducing a prior consistent statement without the defense having alleged a recent fabrication by the victim. Counsel conceded that he "may have opened the door to some extent" by introducing the interview, but maintained that he had limited his questions to the victim's inconsistent statements. Counsel argued that permitting Rivera-Nunez to testify as to the substance of the allegations would violate the first complaint rule. The judge overruled the objection and allowed the prosecutor to elicit the similarities between the victim's testimony and his statements during the SAIN interviews because the issue of suggestibility had been raised by the defendant.

Next, after explaining interviewing techniques and the goals of a SAIN interview, Rivera-Nunez testified that in 2005 the victim told her that he was abused "one time." The victim also told her that the defendant pulled down his pants, asked him to "poo-poo" in the defendant's hand, touched his "pee-pee," and touched his "butt" with his hand.

Recounting the disparity in the frequency of abuse reported in the 2005 and 2008 interviews, Rivera-Nunez explained that in 2005, she did not ask a follow-up question of the victim as to whether he meant one time during a particular visit or one time during a month or other time period. When she interviewed the victim in 2008, who was then eight years old, the interview was longer. During this interview, she asked about the frequency of the abuse. The victim answered that the abuse occurred "every time" he would sleep over at the defendant's home, which was every other Friday. When the prosecutor asked Rivera-Nunez whether the victim told her that he had reported the abuse to Donna, the defendant again objected on first complaint grounds.[6]

---

[6]Counsel also objected on the ground that there did not exist a proper foundation for the prosecutor to elicit a prior consistent statement.

At a lengthy sidebar discussion, the prosecutor explained that she wanted to have the witness explain that it was the disclosure to Donna that began the discussion of the victim's claim that he had been physically abused, because Donna allegedly told the victim to reveal to her what had happened or she would beat him. The judge ruled that she would allow the testimony because it would lend context to what had been presented as a prior inconsistent statement with respect to what the victim reported at the interview. As to the remainder of Rivera-Nunez's testimony, the judge limited any further discussion of the abuse disclosures to the 2008 interview, and then only to the topics of the abuse without details. After the sidebar, Rivera-Nunez testified that the victim told her that he was beaten by Donna, Vivian, and the defendant. She further answered, without detail, that the victim told her that the defendant "lick[ed] his butt," touched his front "private area," and asked him to "go poo-poo" on the defendant's hand.

On appeal, the defendant claims that the admission of Rivera-Nunez's testimony violated the first complaint doctrine. See *Commonwealth* v. *King*, 445 Mass. at 243. We disagree.

We review for an abuse of discretion. See *Commonwealth* v. *Aviles*, 461 Mass. 60, 73 (2011).[7] Thus, the defendant must show that "no conscientious judge, acting intelligently, could honestly have taken the view expressed by [her]." *Commonwealth* v. *Medeiros*, 395 Mass. 336, 351 (1985), quoting from *Commonwealth* v. *Bys*, 370 Mass. 350, 361 (1976). Here, the judge carefully negotiated the evidentiary minefield that the first complaint doctrine can present. When defense counsel raised

---

[7]The defendant claims that *Aviles* is not retroactive to his 2009 trial. However, after oral argument in this case, the Supreme Judicial Court applied the *Aviles* abuse of discretion standard of review to a 2008 trial. *Commonwealth* v. *Roby*, 462 Mass. 398, 399, 408 & n.13, 410 (2012). Also, in *Commonwealth* v. *Haggett*, 462 Mass. 1101 (2012), a case that had been tried in 2009, see *Commonwealth* v. *Haggett*, 79 Mass. App. Ct. 167, 168 (2011), the Supreme Judicial Court denied an application for further appellate review without prejudice and remanded the case to this court for reconsideration in light of *Aviles*. See *Commonwealth* v. *Sasso*, 462 Mass. 1101 (2012) (same order in case involving 2007 trial). The dissent agrees that we are reviewing for an abuse of discretion, but mistakenly conflates that standard with a review for prejudice, i.e., whether we can be "sure that the error did not influence the jury, or had but very slight effect." *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting from *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983). See *post* at 544, 548.

the issue of calling Rivera-Nunez, the judge warned him that he would be opening the door to further disclosure of the victim's complaint. Defense counsel understood and made a strategic choice to travel that path because he needed to impeach the victim's testimony to support his "no access" defense.[8] Once counsel put the victim's credibility at issue by calling Rivera-Nunez as a witness, who introduced the victim's prior inconsistent statements, the Commonwealth had a right, as the judge recognized, to rehabilitate the victim's testimony through cross-examination of the witness. See *Commonwealth* v. *Rodriquez,* 454 Mass. 215, 222 (2009). See also *Commonwealth* v. *Vuthy Seng,* 456 Mass. 490, 498-499 (2010) (when defendant offers victim's prior inconsistent statements "the Commonwealth is permitted to rehabilitate the witness by asking questions designed to explain or contradict the inconsistency even though prior consistent statements by the witness are implicated"); Mass. G. Evid. § 611(b)(1) (2012) ("A witness is subject to reasonable cross-examination on any matter relevant to any issue in the case, including credibility and matters not elicited during direct examination"). In other words, the evidence was not offered as additional complaint testimony. Rather, Rivera-Nunez's testimony on cross-examination was independently relevant to contradict the impeachment evidence and to rebut the defendant's theory of suggestibility. See *Commonwealth* v. *Kebreau,* 454 Mass. 287, 299 (2009). See also *Commonwealth* v. *Aviles, supra* at 69-70; *Commonwealth* v. *Dargon,* 457 Mass. 387, 399 (2010). To prevent any unfair prejudice to the defendant, the

---

[8]For the first time on appeal, the defendant claims that counsel was ineffective for calling Rivera-Nunez as a witness to impeach the victim's testimony. To the extent the defendant's conclusory statement constitutes an appellate argument, it is without merit. Counsel's choice was clearly a matter of strategy and not manifestly unreasonable. See *Commonwealth* v. *Martin,* 427 Mass. 816, 822 (1998). Calling into question the victim's credibility was an essential component of the defense.

The defendant also claims for the first time on appeal that counsel was ineffective for failing to present expert opinion that children are susceptible to suggestions of sexual abuse. Because the basis of this claim does not appear indisputably on the appellate record, and involves factual questions that would more appropriately be considered first by the trial judge, we decline to resolve it. See *Commonwealth* v. *Zinser,* 446 Mass. 807, 811 (2006). We do observe that defense counsel effectively cross-examined Dr. Tishelman on the topic of suggestibility and effectively utilized her testimony in his closing argument.

judge limited any further discussion of the abuse disclosures to the 2008 interview, and then only to the topics of the abuse without details.[9] When Rivera-Nunez's testimony concluded, the judge sua sponte instructed the jury that her testimony was provided solely to assist the jury in evaluating the victim's credibility, and was not independent evidence as to the matters contained in the disclosures. There was no abuse of discretion.[10]

d. *Expert testimony.* (i) *Dr. Fabian Saleh.* The defendant claims that the Commonwealth introduced excessive expert testimony that was more prejudicial than probative. Specific to Dr. Fabian Saleh, a forensic psychiatrist, the defendant claims there was no reason for Dr. Saleh to identify coprophilia as a sexual disorder, because it was not related to pedophilia. We disagree.

As a starting point, although the defendant opposed the motion in limine to permit Dr. Saleh's testimony, he lodged no objection at trial. The claimed error is, therefore, not preserved. See Mass. G. Evid. § 103(a)(3) (2012). See also *Commonwealth v. Whelton,* 428 Mass. 24, 25 (1998) ("It is well established that a motion in limine, seeking a pretrial evidentiary ruling, is insufficient to preserve appellate rights unless there is an objection at trial"). As a result, we review first to determine whether admitting this testimony was error and, if so, whether the admission resulted in a substantial risk of a miscarriage of justice.

Because coprophilia is a sexual fetish that is well beyond the common experience of jurors, and even discordant with com-

---

[9]While the dissent does not disagree with the evidentiary principle at issue, it nonetheless mischaracterizes the testimony as "first complaint testimony," and focuses on the necessity of including the graphic details of what the victim told Rivera-Nunez as a means of rehabilitation. As noted above, the judge was careful to limit this testimony to the topics of the disclosures. We cannot conclude that the judge abused her discretion where those topics included the graphic conduct that formed the basis of the Commonwealth's case.

[10]The defendant also claims, for the first time on appeal, that the admission in evidence of the victim's drawing which depicted the plastic bag incident let in additional complaint testimony. To the extent this one-sentence claim constitutes proper appellate argument, there was no abuse of discretion. The defendant's objection at trial was that the drawing was admitted as an exhibit rather than a chalk, not that it was additional complaint testimony. In any event, the exhibit represented a seven year old child's stick-figure drawing of the event he described on the witness stand. The barely decipherable drawing added little to the Commonwealth's case and did not unfairly prejudice the defendant.

mon sense, it was a proper subject for expert testimony. See *Commonwealth* v. *Shanley*, 455 Mass. 752, 761 (2010); Mass. G. Evid. § 702 (2012). Contrary to the defendant's argument, Dr. Saleh's testimony did not need to be related to pedophilia to be relevant. Indeed, the fact that coprophilia is not related to pedophilia made the testimony less prejudicial to the defendant as it is merely a sexual disorder. To the extent the defendant argues on appeal that Dr. Saleh's description of coprophilia was unnecessarily disgusting, we are hard pressed to fault the judge in any manner for permitting the Commonwealth to explain the unpleasant nature of the crimes the defendant was alleged to have committed. As the judge properly noted during pretrial proceedings, Dr. Saleh's testimony would be important to refute any suggestion that the victim had made up an outlandish thing that has never been known to happen. In any event, the description of coprophilia was brief and not unfairly prejudicial to the defendant,[11] who did not object. There was no error and, thus, no risk that justice miscarried.

(ii) *Dr. Alice Newton.* The defendant claims that Dr. Alice Newton, a pediatrician who specializes in child sexual abuse, should not have been permitted to testify as an expert, because "there were no medical findings" in the case. The defendant moved in limine to exclude Dr. Newton's testimony, but did not object at trial. Thus, the claim is not preserved for appellate review. See *Commonwealth* v. *Whelton, supra.* Dr. Newton testified that in a very high percentage of all cases where anal penetration has occurred it cannot be detected during an exam. Dr. Newton also testified that she would not expect to find evidence of penetration when a tongue is the object of penetration. Also, she related that if bruising does occur, it typically will dissipate within four days to one week. Finally, Dr. Newton stated that if a child sexual assault victim is not brought to the hospital within seventy-two hours, a "rape kit" will not be used. The testimony was proper, and no error occurred, let alone a substantial risk of a miscarriage of justice. See *Com-*

---

[11]Dr. Saleh described coprophilia as "a sexual disorder listed or known in the literature. And the primary focus there is feces. So the person gets sexually aroused or excited by feces, by a smell of bowel movements, by the texture of it, and some of them even eat feces for sexual arousal purposes."

*monwealth* v. *Quincy Q.*, 434 Mass. 859, 873 (2001) ("[I]t is
well within the province of a medical expert witness to explain
that an absence of physical findings does not necessarily indicate
an absence of abuse").

(iii) *Dr. Amy Tishelman.* The defendant also claims that Dr.
Tishelman's testimony was irrelevant because "there was no
suggestion of significantly delayed reporting of any charged as-
sault" and because the judge's first complaint instructions
"repeatedly stated that reports are commonly delayed." As with
Dr. Newton, the defendant moved in limine to exclude Dr. Tishel-
man's testimony, but again he did not renew his objection at
trial, and the matter is not preserved for appellate review. See
*Commonwealth* v. *Whelton, supra.* In any event, the factual
predicate for the defendant's argument is missing. The victim
first disclosed the defendant's abuse in 2005, but it continued
for the next three years unreported until he disclosed in 2008
the defendant's additional assaults. There was no error and, thus,
no risk that justice miscarried.[12]

e. *Tanya's testimony.* During Tanya's first complaint testimony,
she three times testified that she cried in response to the victim's
disclosures. The defendant claims that Tanya's emotional
response was not relevant. When Tanya mentioned crying the
first time, the defendant objected, and the judge stopped the
testimony and asked for the next question. When Tanya
mentioned crying the second time, the defendant objected and
moved to strike the response. The judge struck the response,
instructing the jury to disregard Tanya's reaction as it had no
bearing on the case. When Tanya said she cried a third time, the
defendant again objected, and the judge again told the jury to
disregard Tanya's reaction. At trial, the defendant did not claim
that the judge's instructions were inadequate to cure the problem
as he now claims on appeal. In any event, the defendant does

---

[12]In a single sentence, without supporting authority, the defendant also
claims that the SAIN interviewer, Rivera-Nunez, "was never qualified to offer
testimony, over objection, on children's tendencies in using language and
reporting sexual abuse." This does not suffice for purposes of appellate argu-
ment pursuant Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), and
we treat it as waived. Even if it were not waived, the claim is without merit.
Rivera-Nunez testified extensively about her training and experience as a
forensic interviewer.

not argue how he was prejudiced, and we are satisfied that the jury heeded the judge's admonition to disregard the improper testimony. See *Commonwealth* v. *Rosa,* 422 Mass. 18, 29 (1996) (jury are presumed to have followed the judge's instructions).[13]

f. *Prosecutor's closing argument.* The defendant claims that the prosecutor's closing argument improperly vouched for the victim's credibility. In his closing argument, defense counsel focused on the credibility of the victim, and rhetorically asked the jury, "[W]hy would he lie? Why would he make it up?" Counsel went on to argue that the victim's happy, well-adjusted nature was evidence that the charges were the product of suggestion (by Vivian). In one portion of her closing, the prosecutor responded to the defendant's argument as follows:

> "When you think about the testimony of [the victim], counsel would have you believe that because [the victim] is a good kid and not totally messed up yet, you should discount everything he's saying. How does that make sense? Hold it against him because he's sweet and polite? Sweet and polite? How in God's name could he make this up? He couldn't.

> "He wants you to believe he's sweet and polite. You saw him. He's sweet and polite. He's sweet and polite and a victim of his father's rapes and abuse. He couldn't make it up. What reason could he possibly have? What does he gain from this? What motive does he have? Why would he come into court and talk about these things? It's only the truth that guides [the victim] in his testimony."

As the defendant objected to the prosecutor's suggestion that the truth guided the victim's testimony, we review for prejudicial

---

[13]In a single sentence, without supporting authority, the defendant claims the victim should not have been allowed, over objection, to present evidence of the defendant's or Donna's reaction to his complaint about the plastic bag. This does not suffice for purposes of appellate argument pursuant to Mass. R.A.P. 16(a)(4), and we treat it as waived. Similarly, the defendant's two-sentence claim, without supporting authority, that he was prejudiced by the repetition of the defendant's requests that the victim "poop on his hand" or on a plastic bag, and by reports of the defendant watching the victim in the bathroom, is inadequate for purposes of rule 16(a)(4). Even if not waived, neither claim could be credited with merit.

error. We discern none. "A prosecutor can address, in a closing argument, a witness's demeanor, motive for testifying, and believability, provided that such remarks are based on the evidence, or fair inferences drawn from it, and are not based on the prosecutor's personal beliefs. . . . When credibility is an issue before the jury, 'it is certainly proper for counsel to argue from the evidence why a witness should be believed.' " *Commonwealth* v. *Freeman*, 430 Mass. 111, 118-119 (1999), quoting from *Commonwealth* v. *Raymond*, 424 Mass. 382, 391 (1997). Here, the prosecutor used a series of rhetorical questions, based on the evidence, to answer the question posed by the defendant in his closing argument. See *Commonwealth* v. *Chavis*, 415 Mass. 703, 713 (1993) ("[T]he prosecutor may make a fair response to an attack on the credibility of a government witness"). These questions did not inject personal belief into the case. See *Commonwealth* v. *Raposa*, 440 Mass. 684, 694-695 (2004); *Commonwealth* v. *Lindsey*, 48 Mass. App. Ct. 641, 645 (2000). To the extent the prosecutor's remark about the victim's testimony being guided by the truth edged too close to explicit vouching, we have reviewed the entire argument in context, as well as the judge's unchallenged and specific instruction relative to the nonevidentiary nature of closing arguments, and determined there was no reversible error. See *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 (1987).

g. *Sleeping juror*. After the close of the Commonwealth's case, the judge noted for counsel that she had observed juror no. 8 apparently sleeping during the presentation of the case. The prosecutor agreed that she too had seen the juror asleep during a significant part of the victim's testimony and almost all of Vivian's testimony. The judge conducted a voir dire of the juror at sidebar where the juror disclosed that he suffered from sleep apnea. The juror explained that "it looks like I'm asleep but I'm not. I've been paying attention." The prosecutor requested that the juror be excused, and the defendant objected and noted that juror no. 8 was the "only minority [i]n the pool." The judge reserved decision on the matter and stated she would observe the juror during the presentation of the defense.

At the close of all the evidence, the prosecutor renewed her request that juror no. 8 be removed, or at least made an alternate.

Based on her observations, the judge had some doubt as to the juror's level of alertness, although the juror seemed more alert than he had been. At the prosecutor's suggestion, and without objection, the court heard telephonic testimony from Dr. Benjamin Raby, a pulmonologist and an assistant professor at Harvard Medical School, who was familiar with sleep apnea. As summarized by the judge, according to Dr. Raby, the parties could not rely on a person's own perception of their degree of wakefulness, which was of considerable concern to the judge. Nonetheless, at the defendant's suggestion, the judge agreed to further observe the juror during arguments and the final charge.

The juror remained awake for the defendant's closing argument, but he slept though the prosecutor's closing. After the final charge, over the defendant's objection, the judge excused juror no. 8 because he had slept through the prosecutor's closing arguments and during portions of the evidence and the final charge. As a result, the judge was not confident that the juror heard all the evidence or the jury instructions.

When a judge observes that a juror is asleep, or is provided reliable information to that effect, the judge is required to intervene to protect both the rights of the defendant as well as those of the Commonwealth, as each enjoys the right to decisions made by alert and attentive jurors. See *Commonwealth* v. *Beneche*, 458 Mass. 61, 78 (2010); *Commonwealth* v. *Dancy*, 75 Mass. App. Ct. 175, 181 (2009). It is within the judge's discretion to determine the nature of the intervention, including conducting a voir dire. See *Commonwealth* v. *Braun*, 74 Mass. App. Ct. 904, 905 (2009). "The burden is on the defendant to show that the judge's decision in the matter was 'arbitrary or unreasonable.' " *Commonwealth* v. *Beneche, supra*, quoting from *Commonwealth* v. *Brown*, 364 Mass. 471, 476 (1973). We conclude that there was no such abuse of discretion here.

The judge carefully and patiently addressed the issue over the course of the trial, relied on her own observations and those of counsel, and conducted a voir dire of juror no. 8. The judge did not act in haste but instead twice permitted the juror to remain despite the prosecutor's desire for the juror to be removed and the judge's own concerns about the juror's alertness. The judge went a step further and heard expert testimony on sleep apnea

and its effect on attentiveness. The fact that juror no. 8 was a member of a racial minority did not require that he remain on the jury given the judge's findings.[14]

*Judgments affirmed.*

MILLS, J. (dissenting). I respectfully disagree with the majority because I conclude that the admission of multiple complaint testimony was an abuse of discretion, and that it cannot be said that the erroneous admission of significant corroborative testimony "did not influence the jury or had but very slight effect." *Commonwealth* v. *Arana,* 453 Mass. 214, 228 (2009), quoting from *Commonwealth* v. *Flebotte,* 417 Mass. 348, 353 (1994). I would reverse the convictions.

1. *Background facts.* In evaluating the sufficiency of the evidence under the familiar standard of *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979), I agree with the majority. However, I use a different standard, a neutral platform, in evaluating the judge's rulings to admit the multiple complaint testimony. For this analysis, I do not consider the evidence in a light favorable to either party.

2. *Complaint evidence.* The defendant called the child's SAIN interviewer,[1] Emily Rivera-Nunez, to illustrate inconsistencies between the child's trial testimony and his earlier statements to Rivera-Nunez. The defendant argues that during cross-examination the Commonwealth elicited impermissible complaint evidence. See *Commonwealth* v. *King,* 445 Mass. 217, 241-248 (2005), cert. denied, 546 U.S. 1216 (2006) (limiting complaint testimony to that of the first person told of the abuse or, under certain conditions, another designated first complaint

---

[14]Returning to a familiar theme, the defendant claims for the first time on appeal, in two sentences without supporting authority, that "anyone having anything to do with kids was excused from serving" on the jury, which left the remaining jurors with the ability to "measure kids' credibility only through prejudice." As before, this does not suffice for purposes of appellate argument pursuant to Mass.R.A.P. 16(a)(4), and we treat it as waived. Even if the argument was not waived, the rights of criminal defendants do not include a right to have a jury composed of individuals who are familiar with children.

[1]Complaints of child sexual abuse are investigated through the Sexual Abuse Intervention Network (SAIN).

witness), cert. denied, 546 U.S. 1216 (2006). See also *Commonwealth* v. *Aviles*, 461 Mass. 60, 67-73 (2011). It is uncontested that Rivera-Nunez was not a first complaint witness.[2] "The first complaint doctrine does not, however, 'prohibit the admissibility of evidence that, while barred by that doctrine, is otherwise independently admissible.' " *Id.* at 69, quoting from *Commonwealth* v. *Arana*, *supra* at 220-221. We are instructed to analyze the challenged evidence to determine whether it (1) "was independently admissible," (2) "served some purpose other than to corroborate the [complainant's] accusation," and (3) "was sufficiently important to a fair understanding of the Commonwealth's case so that the probative value of the evidence outweighed any prejudice." *Commonwealth* v. *Starkweather*, 79 Mass. App. Ct. 791, 799 (2011), citing *Commonwealth* v. *Arana*, *supra* at 225-226, and *Commonwealth* v. *Dargon*, 457 Mass. 387, 400 (2010).

On direct examination, Rivera-Nunez testified about the child's statements to her during SAIN interviews in 2005 and 2008. She recounted that in the 2005 interview the child said he had been touched inappropriately only once. In the 2008 interview, the child said that the defendant sexually abused him every time he stayed at his grandmother's house, and that both his mother and the defendant had hit him. These statements were inconsistent with the child's testimony at trial that he was touched more than once when he was five years old (which was before his first SAIN interview), that he had only one SAIN interview, that he did not tell Rivera-Nunez that either parent hit him, and that he did not say he was touched during every visit to his grandmother's house. During cross-examination, the Commonwealth questioned Rivera-Nunez extensively about the details of the sexual abuse complaints the child made during the SAIN interviews. Reviewing the record, I count at least fifteen instances of explicit sexual abuse complaint testimony, primarily in the form of prior consistent statements.[3]

The Commonwealth contends that this testimony was

---

[2] One of the child's kindergarten teachers testified as the designated first complaint witness.

[3] For example, the Commonwealth elicited testimony that the child said "his dad wanted him to do poo-poo on his hand," "his father would lick his butt," and "the hand that touched his pee-pee was wrapped around like a circle."

independently admissible for two purposes: to rehabilitate the child following impeachment by prior inconsistent statements, and to counter an implication by the defense of suggestibility in Rivera-Nunez's interviewing techniques. "While generally, 'impeachment of a witness by prior inconsistent statements or omissions does not, standing alone, entitle the adverse party to introduce other prior statements made by the witness that are consistent with his trial testimony,' *Commonwealth* v. *Bruce*, 61 Mass. App. Ct. 474, 482 (2004), the Commonwealth is permitted to rehabilitate the witness by asking questions designed to explain or contradict the inconsistency even though prior consistent statements by the witness are implicated." *Commonwealth* v. *Vuthy Seng*, 456 Mass. 490, 498-499 (2010). See *Commonwealth* v. *Rodriquez*, 454 Mass. 215, 222 (2009) (after impeachment, "prosecutor was entitled to elicit from [witness] the reason for his contradictory statement and the substance of his consistent statement"). See also Mass. G. Evid. § 613(b) (2012) (prior consistent statements generally inadmissible absent a charge of recent fabrication). Defense questioning of Rivera-Nunez revealed that the child's testimony that no one hit him, that the touching did not occur during every visit, that he was touched more than once when he was five years old, and that he only had one SAIN interview was inconsistent with his prior statements to Rivera-Nunez. It is not clear to me how the graphic details of the child's complaints of sexual abuse explain or contradict those inconsistencies.[4] The complaints merely corroborate his sexual abuse testimony at trial. I agree with the trial judge that, to any extent that defense questioning left the misleading impression that the child had not mentioned significant sexual abuse to the SAIN interviewer, the Commonwealth was entitled to rebut it.[5] See *Commonwealth* v. *Vuthy Seng*, 456 Mass. at 497. See also *Commonwealth* v. *Aviles*, 461 Mass. at 69. Rebuttal may also have been appropriate to address

---

[4]By comparison, Rivera-Nunez's testimony about how children experience, remember, and discuss past events effectively addressed why a child might, for example, use the phrase "every time" when discussing sporadic abuse.

[5]Responding to defense objections, the judge stated, "I think it is fair to lend context . . . to his statements to the SAIN interviewer about the parents beating him. As it was presented, it came out as if he told entirely different things to the SAIN interviewer tha[n] he did at trial . . . ."

an implication by the defense that the child was influenced by suggestive questioning.[6]

However, the first complaint testimony here was of limited probative value. The Commonwealth fully availed itself of the opportunity to question Rivera-Nunez about her interviewing techniques, and the defense essentially stipulated that she used appropriate methods. Moreover, as suggested by the defense at trial, the Commonwealth could have elicited general testimony as to the existence of the child's sexual abuse complaints.

Even if a few specific questions were appropriate, the Commonwealth used its cross-examination of Rivera-Nunez to repeat both of the child's prior complaints in at least fifteen instances of detailed testimony. Over repeated objections and a request by the judge not to go into the details of the 2008 disclosures, the Commonwealth launched this illustrative final volley:

> *Q.*: "[The child] disclosed during the course of the bulk of that interview that his father would lick his butt?"
>
> *A.*: "Yes."
>
> *Q.*: "That his father would touch him in the private area?"
>
> *A.*: "Yes."
>
> *Q.*: "On his front?"
>
> *A.*: "Yes."
>
> *Q.*: "And that his father asked him to, in [the child's] words, go poo-poo on his father's hand; is that correct?"
>
> *A.*: "Yes."

---

[6]Prior to Rivera-Nunez's testimony, the defense had questioned an expert witness, Dr. Amy Tishelman, about the risk of suggestive questioning in child sexual assault cases. I note that the defense attorney did not elaborate on the concept of suggestibility in his examination of Rivera-Nunez. As the Commonwealth's cross-examination progressed, the defense acknowledged, more than once, that the SAIN interviewer used appropriate, nonsuggestive questioning techniques and, in substance, that there was no risk of suggestibility during her interviews.

I agree with the majority that *Commonwealth* v. *Aviles, supra* at 73, retroactively sets an abuse of discretion standard for this case. Nevertheless, given the extensive and explicit complaint testimony in this case, I conclude that the admission of this multiple complaint testimony constituted an abuse of discretion. Additionally, by graphically repeating the child's prior complaints, Rivera-Nunez's inadmissible testimony provided significant corroboration for the child's credibility. See *Commonwealth* v. *Arana*, 453 Mass. at 228 (new trial required where inadmissible first complaint evidence improperly bolstered complainant's credibility). Based on the record before us, I cannot say that the erroneous admission of the corroborative testimony "did not influence the jury or had but very slight effect." *Ibid.*, quoting from *Commonwealth* v. *Flebotte*, 417 Mass. at 353.[7] Accordingly, I would reverse.

---

[7] I am mindful that the defendant was convicted of multiple counts, with each count supported by different and various evidence, not equally persuasive.